*In re* COUNTY COLLECTOR.—(NATIONAL COLLEGE OF EDUCATION, Objector-Appellant.)

First District (5th Division)    No. 76-3

Opinion filed August 27, 1976.—Rehearing denied September 21, 1976.

APPEAL from the Circuit Court of Cook County; the Hon. LAWRENCE GENESEN, Judge, presiding.

Keck, Cushman, Mahin & Cate, of Chicago (Thomas E. Brannigan and James L. Woolner, Jr., of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and David J. Magee, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by the objector, National College of Education (the College), from an order finding real estate owned by it to be nonexempt school property and therefore subject to taxation. The property in question is a house in Wilmette, Illinois, which is the residence of the College president, and the issue presented is whether it was used "primarily" for school purposes.

The house was acquired by the College on December 21, 1972, partly by gift and partly by purchase. A real estate assessment was made, and taxes in the amount of $7,287.88 were levied in 1973. The College paid this amount in full, but under protest. This action was then filed by the College, asserting that the property "was exempt from taxation pursuant to the provisions of Illinois Revised Statutes, Chapter 120, paragraph 500.1, for the reason that the real estate is used as a home for the President of the National College of Education." It asked that the house be declared exempt from taxation for the year 1973 and that the taxes paid under protest be refunded.

The only person testifying at trial was the vice president for business affairs of the College. He described the uniqueness of the institution in that it trained elementary schoolteachers exclusively, offering masters' and bachelors' degrees in teaching. It also operated a lab school in connection with its training programs. He stated that the College is a nonprofit, private institution, unaffiliated with any religious group and receiving no public funds. As a result, he said, private fund raising, economical administration, alumni support, and efficient use of its facilities are essential to its survival.

Concerning the property, he testified that it is a large house with extensive grounds, located on the shore of Lake Michigan and, although used as the residence of the president, it is used as well for a number of educational, fund raising, business, alumni and social activities of the College. The witness included the following among the activities carried on in the house: An annual luncheon and workshop for the alumni association; an annual alumni tea; a student potluck supper held three times a year; an annual graduation luncheon for trustees and recipients of honorary degrees; a luncheon for past presidents of the alumni association; a coffee reception once a year for the College's auxiliary women's group; an annual luncheon for the board of associates, a group of business men who raise money for the College; a dinner and workshop for faculty, held in the Fall of each year; a number of receptions for distinguished speakers; receptions for the cast of College theatrical

productions, retiring members of the faculty and new administrators; a cocktail party for large contributors; a Christmas party for associates, donors and some public officials; and a number of other small social gatherings. He testified also that the property is located two blocks from the main campus; that the College had always provided a home for its president, and that the prior residence of the president was about two miles from the school and had been tax-exempt. On cross-examination, he stated that classes are not held in the home; that access to the home is by invitation only; and that the primary use of the premises is to house the president and his family.

The trial court found that the property was not exempt, stating that it is used primarily for residential purposes as an accommodation for the president and only incidentally for college related purposes.

Opinion

Article IX, section 6, of the Illinois Constitution of 1970, like its predecessor, section 3 of article IX of the 1870 Constitution, provides in pertinent part that the General Assembly may exempt from property taxation only "property used exclusively for * * * school * * * purposes." The General Assembly has enacted such an exemption in sections 19 and 19.1 of the Revenue Act of 1939 and, pursuant to section 19.1, the property of schools "used * * * exclusively for school purposes" is exempted. Ill. Rev. Stat. 1973, ch. 120, pars. 500, 500.1.

■■ Statutes exempting property from taxation must be strictly construed and cannot be extended by judicial interpretation. (*MacMurray College v. Wright*, 38 Ill. 2d 272, 230 N.E.2d 846; *Kiwanis International v. Lorenz*, 23 Ill. 2d 141, 177 N.E.2d 220; *Rotary International v. Paschen*, 14 Ill. 2d 480, 153 N.E.2d 4; *Coyne Electrical School v. Paschen*, 12 Ill. 2d 387, 146 N.E.2d 73.) In determining whether property is included within the scope of a tax-exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. (*MacMurray College; Kiwanis International; Rotary International.*) The burden of sustaining the right of exemption rests upon the party seeking it, and he must show clearly that the specific property for which exemption is claimed is within the contemplation of the law. (*MacMurray College; Kiwanis International; Rotary International.*) As stated in *MacMurray College*, at page 278:

> "Each individual claim for tax exemption must be determined from the facts presented. [Citations.] A party seeking tax exemption for staff housing facilities as property exclusively used for school purposes obviously must do more than merely show that the property is owned by the school and occupied by school personnel. There must be use exclusively for school purposes.

However, one is not required to show that the use of the property is absolutely indispensable for carrying out the work of the institution. [Citation.] The primary use of the property, not its incidental uses, determines its tax exempt status. [Citation.] Exemption will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution."

Thus, the central issue here is the question of the primary use of the subject property.

In support of its argument, the College cites *People ex rel. Joseph v. McKendree College*, 4 Ill. App. 3d 504, 282 N.E.2d 234, wherein the college president's home was held to be tax-exempt. We note, however, that the opinion does not state any facts, but merely holds:

"The evidence conclusively established that the building in question is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the educational objectives of McKendree College. *MacMurray College v. Wright*, 38 Ill. 2d 272."

This opinion was issued pursuant to Supreme Court Rule 23 and is therefore to be given no precedential value as the opinion so states.

■■ Our examination of the record leads us to the conclusion that the trial court correctly ruled that the primary use of the president's mansion was residential and its school use only incidental. While the home was used for school related activities, we do not believe this transformed its primary use to other than that of a residence for the president and his family. We note that such use in similar circumstances has been held not to change the primary use into a school related use. In *St. John Evangelical Lutheran Congregation v. Board of Appeals*, 357 Ill. 69, 191 N.E. 282, a building owned by a religious organization and occupied rent-free by an instructor in its parochial school was held taxable although "backward" students were sometimes tutored there. In *Knox College v. Board of Review*, 308 Ill. 160, 165, 139 N.E. 56, it was held that a school president's home eleven blocks from the campus "without any condition for educational purposes or work being required to be performed there," was used primarily as a home and therefore not tax-exempt. Likewise, in *MacMurray College*, it was held that certain dwellings used in housing faculty and staff on school property adjacent to the college's campus were not exempt from taxation in spite of the General Assembly's exemption for "staff housing," inasmuch as the residential use was primary and the constitution limited the exemption to facilities used "exclusively" or primarily for school purposes.

While the school related uses of the home here were perhaps more

frequent and better documented than in the cases cited, it nonetheless appears to us that they were only incidentally school related and, we believe, not sufficient to transform the primary character and function of the house into other than that of a personal residence. The vice president for business affairs at the College stated that the primary use of the house was for a residence of the president, and we agree. In view thereof, we conclude that the trial court's denial of the exemption was not erroneous, and we affirm its judgment.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.