STANLEY STEVENS, Plaintiff-Appellee, v. EDWARD J. ROSEWELL, Cook County Treasurer, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 87—0850

Opinion filed May 2, 1988.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mark R. Davis, and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for appellants.

Flanagan, Bilton & Brannigan, of Chicago (Dean H. Bilton and Thomas E. Brannigan, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

In 1986, McDonald's Corporation (McDonald's) and Stanley Stevens (Stevens) filed a declaratory judgment suit in the circuit court of Cook County against the Cook County treasurer, the Cook County clerk, and the Cook County assessor (defendants). Plaintiff sought to enjoin defendants from collecting back real estate taxes on a McDonald's restaurant, operated by Stevens and located on the campus of Moraine Valley Community College (MVCC). Plaintiff also sought a determination of the rights of the parties pursuant to the agreement between MVCC and McDonald's which was the basis for the assertion of tax liability by the Cook County defendants.

MVCC is a public community college in District 254, located in Palos Hills, Illinois. In December 1982, MVCC entered into a "service agreement" with McDonald's whereby McDonald's would provide the food service on campus, in MVCC's "College Center," in exchange for the payment of money to MVCC.

The MVCC property in District 254 is tax-exempt property under the relevant Illinois statute. (Ill. Rev. Stat. 1985, ch. 120, par. 500.18.) The defendants alleged that the agreement herein between MVCC (or District 254) and McDonald's constituted a lease of a portion of MVCC's property to McDonald's, which conveyed an interest in property to McDonald's and, accordingly, subjected McDonald's and its franchisee to tax liability for the use of the property. (See Ill. Rev. Stat. 1985, ch. 120, par. 500.18.) The plaintiff, on the other hand, contended that the agreement merely created a license, *i.e.*, a bare right to use a portion of the property, not a lease and, consequently, the use of the property by McDonald's was not taxable inasmuch as there was no conveyance of any interest in the property. Both sides filed motions for summary judgment, and the circuit court ruled that the original agreement was a license, and accordingly, no taxable interest was created by the agreement. The court then granted summary judgment to the plaintiff and enjoined the defendants from assessing real estate taxes upon the property. Defendants now appeal the ruling in favor of Stevens. McDonald's is no longer a party to this proceeding.

The agreement in issue here between MVCC and McDonald's was entitled "service agreement" and was to continue for a period of five years with three successive five-year options. Article I of the agreement stated that the agreement was not a lease, but a license and

service agreement. Specifically, it stated, "McDonald's is hereby given the exclusive right, license and concession to provide, operate, and maintain food service facilities on the campus of the College." Under the agreement, rent of $30,000 per year plus an additional 6% of gross sales in excess of $500,000 was to be paid to MVCC. In addition, the agreement provided that McDonald's was to operate the restaurant in the College Center, in a designated area on the first floor, and was to be responsible for development of the kitchen area, including installation and maintenance of equipment in that area. MVCC was responsible for those areas outside the kitchen area, except for general maintenance of the dining area, which was also McDonald's responsibility. McDonald's was allowed to develop other facilities on the campus, subject to MVCC's consent, and a provision was made for the division of any "permanent leasehold improvements." Additionally, McDonald's was to be open when school was in session and McDonald's was to use its best efforts to employ college students.

The agreement limited the type and number of signs McDonald's could post, but provided that McDonald's employees would have a right of ingress and egress onto the college, subject to school regulations. The agreement also prohibited assignment by McDonald's, but it did allow McDonald's to contract with one of its licensees or franchisees with MVCC approval. Finally, the agreement authorized MVCC to inspect McDonald's sales records for the facility at reasonable times.

At the hearing on the motion for summary judgment, the plaintiff submitted the deposition of John Noga, McDonald's Chicago-area real estate manager, in support of his motion for summary judgment, to establish the intent of the parties in entering into the agreement. Noga testified in his deposition that the agreement was intended to be a license and was set up as a license, instead of a lease agreement, for two reasons; first, to provide flexibility concerning where campus food could be served, and second, to avoid real estate taxes. He also stated in his testimony that McDonald's generally did not enter into this type of agreement.

Noga also testified in his deposition that after McDonald's entered into the service agreement with MVCC, it subsequently entered into another agreement with Stanley Stevens. In the agreement with Stevens, McDonald's granted Stevens the right to use the McDonald's system at MVCC and all other rights granted to McDonald's under the MVCC-McDonald's agreement, in exchange for an annual fee. Noga said that McDonald's itself never actually operated

the restaurant at MVCC at all; only Stevens operated the restaurant pursuant to its agreement with McDonald's. Additionally, Stevens testified in his deposition that the McDonald's at MVCC was open whenever school was in session, and asserted that MVCC did control the first-floor kitchen facility pursuant to the agreement. He also stated, however, that at present the first-floor facility was the only facility McDonald's had developed at MVCC.

In this appeal the Cook County defendants contend, as they did in the trial court, that the food service agreement is not a license agreement, but rather is a lease agreement, which subjected Stevens, as the operator of the McDonald's franchise, to real estate taxes. Defendants also assert that the service agreement fulfills all the essential requirements of a lease, since the agreement is for a definite period, there is an area with specific fixed boundaries provided within the property, and, finally, the agreement sets a fixed rental price and manner of payment. Furthermore, the defendants contend that under Illinois law, a license cannot be assigned, but here, McDonald's did assign the agreement to Stevens. Thus, the defendants conclude that all these facts establish that the parties did in fact create a lease agreement, not a license, regardless of what they may have intended or said they intended to do in the agreement. Additionally, the defendants note that under Illinois law, since the burden of proof rests on plaintiff Stevens to show that this property is tax exempt, any questionable matters must be resolved in favor of taxation. See *In re County Collector* (1976), 41 Ill. App. 3d 633, 354 N.E.2d 507.

Conversely, the plaintiff argues that the food service agreement is a license which merely grants McDonald's the exclusive right to provide food on MVCC's property, wherever MVCC directs that that service should be provided. Such an agreement, the plaintiff argues, is not a lease and is properly a tax-exempt transaction. The plaintiff further contends that it is clear that the parties did not intend to create a leasehold interest in real estate by the agreement. Additionally, the plaintiff asserts that this agreement did not convey exclusive possession or control to any particular piece of real estate and, in actuality, MVCC retained control of even the kitchen and dining area. The "assignment" to the operator of the premises, Stevens argues, did not alter the fact that this is a license agreement, since the agreement itself contemplated operation of the facility by a franchisee. The plaintiff further notes that here he is limited to running a McDonald's on the premises and that McDonald's food operations are frequently run by franchisees and he must run the McDonald's as

if it were run by McDonald's itself. Therefore, the plaintiff submits that this is not an assignment of a leasehold interest. Furthermore, the plaintiff contends that there is no presumption of real estate taxation here because no real estate is involved, but merely a service agreement.

Real property belonging to community college districts is exempt from taxation by statute. That exemption is limited, however, and when tax-exempt real estate is leased to another whose property is not exempt, the leased property must be listed as the real estate of the lessee. (Ill. Rev. Stat. 1985, ch. 120, pars. 500.18, 507.) On the other hand, licenses are not considered taxable interests in real estate under the statute. (*Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 547, 417 N.E.2d 1039, 1043.) In Illinois, one who claims an exemption from a property tax has the burden of proving, by clear and convincing evidence, that his or her property comes within the exemption, and the presumption is against the intent of the State to exempt property from taxation. *Metropolitan Sanitary District v. Rosewell* (1985), 133 Ill. App. 3d 153, 155, 478 N.E.2d 1100, 1101.

Whether a contractual agreement is a lease or a license is determined from the legal effects of its provisions, not from the language used, and the intent of the parties. (*People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, 629, 391 N.E.2d 42, 45.) As our court stated in *Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 417 N.E.2d 1039: "[The] [e]ssential requirements of a lease include: a definite agreement as to the extent and bounds of the property; a definite and agreed term; and a definite and agreed rental price and manner of payment [citation]. A license is not assignable, and merely gives another the right to use the premises for a specific purpose with the owner retaining possession and control." 93 Ill. App. 3d at 546-47, 417 N.E.2d at 1043.

The agreement in the present case is entitled "service agreement." While it states that it is not a lease but a license and service agreement, the agreement between MVCC and McDonald's is for a fixed term of five years, with three successive five-year options, is for a fixed rental and has a definite manner of payment ($30,000 per year plus 6% of gross sales in excess of $500,000). The food operation itself is limited to a fixed location in the kitchen facility of the College Center, and the location is additionally described by a floor plan and diagram of the area. Although the agreement provides that the location may be expanded to include other service facilities on

campus, and that MVCC reserved the right to contract for additional catering or banquet services, in fact, no other areas are specifically designated in the agreement, nor were any other areas actually utilized by McDonald's.

The deposition of John Noga, McDonald's Chicago real estate manager who helped negotiate this agreement, stated that the reason for drafting this agreement as a service agreement and not a lease was to provide flexibility as to where food could be served on campus and to avoid real estate taxes. Additionally, Noga noted in his deposition testimony that McDonald's generally did not enter into this type of agreement. Further, the deposition of Stanley Stevens established that Stevens was to be the operator of the MVCC McDonald's, pursuant to the agreement between himself and McDonald's in which McDonald's actually assigned him all its rights under the original agreement between MVCC and McDonald's. Thus, we believe, after considering all of these terms, that the legal effect of the agreement was to create a lease between the parties, even though they tried to avoid doing so.

The present case is distinguishable from *In re Application of Rosewell* (1979), 69 Ill. App. 3d 996, 387 N.E.2d 866, where we found that certain agreements between the City of Chicago and various parking facility operations were licenses, not leases. In that case, the city actually retained possession of the premises. Under the agreement there, the city controlled the hours of operation, the type of uniforms the employees wore, the signs posted, the parking rates charged, the manner of marking the lanes, the type of cash registers used, any major maintenance in the garages, the operator's budget, the operator's ability to subcontract, and any alterations to the premises by the operator. Additionally, there the "rent" was nearly 96% of the gross revenues from the operation of the garages, and the court found the remaining 4% to be merely a fee or salary for operating the garages. The control of all those functions clearly indicated that the city only intended to transfer the operation of the garages and to pay the operators a fee determined by the gross revenues as payment for management services. (69 Ill. App. 3d at 1003, 387 N.E.2d at 870.) Clearly, that was not the situation here.

Under the agreement here, MVCC had little control over the McDonald's facility or its operation; it did not control McDonald's menu, its employees' uniforms, its budget, its kitchen area or the equipment it used therein. Additionally, given the nature and operation of McDonald's restaurants, *i.e.*, McDonald's has its own stringent requirements for the operations of its restaurants, as was evidenced by the

agreement between Stevens and McDonald's, the operation of the McDonald's restaurant was totally independent of the terms of the service agreement. Further, the rent paid here was for a fixed amount over a term of years and not merely for a service. Also, the agreement was for a specific fixed location where McDonald's, through Stevens, in fact had exclusive possession of the kitchen facility, even though MVCC reserved certain rights to access.

We find the case of *People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, 391 N.E.2d 42, to be more analogous to the present case. In that case, the automobile rental company was granted the right to operate its car rental business at certain spaces within O'Hare Airport. In the agreement the precise locations of the spaces were to be determined by the commissioner of aviation; the rate it charged for its rent-a-car service was subject to approval by the aviation commissioner; the employees and invitees of Metro were required to conduct themselves in an orderly and proper manner; Metro was required to keep the facilities open for sufficient amounts of time to meet the reasonable demands of service; and the city retained the right to make reasonable inspections of Metro's operations. In exchange for this right to provide the rent-a-car service at O'Hare, Metro was required to pay a concession fee based upon a percentage of gross receipts. While this court did note that Metro's operations were strictly regulated by the city, the court, nevertheless, found that the agreement passed a possessory interest in specific property. This court found that the terms of the agreement established a license relationship since it set forth certain square footage in each terminal to be used by Metro, provided a definite and fixed term for the agreement, and set a fixed price for the rental of the property. The court found "the limitations upon use and the restrictions imposed upon the operation of the business do not affect the existence of the lease." *People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, 630, 391 N.E.2d 42, 45.

We too find the legal effect here was to create a leasehold interest and that MVCC conveyed a possessory interest in the kitchen facility and related storage areas to McDonald's in which McDonald's, not MVCC, retained exclusive control. The limitations and restrictions in the agreement imposed on McDonald's were far less than those in the *Metro* case, and, like the *Metro* case, they did not affect the existence of a lease. Hence, the agreement here did not provide for merely the right to serve food, but it in fact created a leasehold interest in the operation of the food service under the statute. See Ill. Rev. Stat. 1985, ch. 120, par. 507.

Accordingly, for these reasons, the judgment of the circuit court of Cook County, which granted summary judgment to the plaintiff, is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Judgment reversed and remanded.

O'CONNOR and MANNING, JJ., concur.