MILLENNIUM PARK JOINT VENTURE, LLC, Plaintiff-Appellee, v. JAMES M. HOULIHAN, Cook County Assessor, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—07—3141

Opinion filed June 29, 2009.

14

WOLFSON, J., dissenting.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Tatia Gibbons, and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for appellants.

Stephen Novack, John F. Shonkwiler, and Christopher S. Moore, all of Novack & Macey LLP, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Millennium Park Joint Venture, LLC, brought a

declaratory judgment action against the defendants, James Houlihan, Cook County assessor, Maria Pappas, Cook County treasurer, and the County of Cook, seeking a declaration that a real property tax assessment against the plaintiff's contractual interest in property located in Millennium Park was unauthorized and unlawful. The plaintiff also sought a declaration that taxation of the plaintiff's interest would violate section 4 of article IX of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §4). Finally, the plaintiff sought to enjoin the imposition and collection of any property tax on the plaintiff's interest.

The circuit court denied the defendants' motion to dismiss for lack of subject matter jurisdiction. On cross-motions for summary judgment, the circuit court ruled for the plaintiff and declared the plaintiff's interest a nontaxable license. The defendants appeal from the denial of their motion to dismiss, the grant of summary judgment to the plaintiff and the denial of their motion for summary judgment.

On appeal, the defendants raise the following issues: whether the circuit court had subject matter jurisdiction to rule on the plaintiff's challenge to a real property tax assessment and whether the circuit court's determination that the concession permit agreement was a license was correct as a matter of law.

## I. BACKGROUND

The pertinent facts are taken from the pleadings, affidavits and exhibits contained in the record on appeal.

### A. *The Concession Permit Agreement*

On February 11, 2003, the plaintiff entered into a "Concession Permit Agreement" (the Agreement) with the Chicago Park District (the Park District) whereby the plaintiff was permitted to use certain portions of Millennium Park. The first portion, referred to as "the premises" consisted of a sit-down restaurant known as the "Park Grill," a gourmet bakery/café and ice cream parlor, a seasonal retail store and "certain storage areas to be located in the Tunnel." The second portion was designated as the "concession area." In that area, the plaintiff would operate a seasonal mobile concession business, subject to the approval of the Park District.

The Agreement was for a 20-year period and provided the plaintiff with the option of extending the term for two additional periods of five years each. The plaintiff was required to pay a minimum fee of $275,000 per year in monthly installments and to pay a percentage fee based on the years of the Agreement and the amount of sales. The Agreement further provided for the abatement of the annual fee until the earliest of certain specified events. Included in the Agreement

were diagrams of Millennium Park showing the locations of the spaces to be utilized by the plaintiff.

Under the terms of the Agreement, the plaintiff was not permitted to "give, sell, license, assign, sublet, permit, subcontract, subconcession or otherwise transfer its interest" in the Agreement without the prior written consent of the Park District. Such consent was at the discretion of the Park District but, after five years, the Park District was not to "unreasonably" withhold its consent. Subject to certain conditions, the plaintiff was allowed to enter into license agreements for up to 50% of the concession carts in the concession area. The Agreement provided a disclaimer to the effect that the plaintiff was an independent contractor and that there was no principal/agent, partnership or joint venture relationship between the parties to the agreement.

The Agreement set forth numerous requirements for the plaintiff's operations in Millennium Park. The Agreement set forth the minimum times and dates of operation and the permitted uses of the various areas. However, the Park District was not required to keep Millennium Park open for any minimum amount of hours. The plaintiff was required to adequately staff the facilities with well-trained personnel for efficient first-class service and to provide adequate stock. The plaintiff agreed that "the foregoing obligations go to the essence of the parties' agreement hereunder."

Other requirements under the Agreement included the Park District's approval of all signs used by the plaintiff and any name change. The Park District required that certain "Key Men" or "Alternate Key Men" operate the plaintiff to insure the quality of the plaintiff's operation in Millennium Park. Under the terms of the Agreement, the plaintiff was subject to the Park District's requirements as to employee uniforms, cleanliness, pest control, signage, repair and maintenance, ice and snow removal and food safety rules. The plaintiff was also required to carry certain minimum amounts of insurance.

Finally, the plaintiff was required to furnish the Park District with statements of its monthly gross sales for the calculation of the percentage fee. The Park District was also permitted to review the plaintiff's financial records in order to determine gross sales.

### B. *The Complaint for Declaratory Judgment*

On August 5, 2005, the plaintiff filed its complaint for declaratory judgment. The complaint contained the following pertinent allegations. The plaintiff and the Park District had entered into the Agreement under which the plaintiff was permitted to operate certain busi-

nesses in Millennium Park. The terms of the Agreement did not grant the plaintiff full enjoyment and exclusive possession of the areas in which it conducted its businesses. The Agreement did not use the term "lease" in or to describe the agreement, and it did not provide for the payment of rent or grant the plaintiff a leasehold interest. The Agreement also contained a number of provisions through which the Park District maintained control over the property and the plaintiff's operation of its businesses. Any disputes between the parties were to be decided by the general superintendent of the Park District. The Park District's remedies under the Agreement were different from those in a lease; the Park District could terminate the Agreement immediately upon the occurrence of any one of several specified occurrences. However, the Agreement did not contain any forcible entry and detainer provisions or other landlord-tenant remedies or tenant protections.

The complaint further alleged that, during February 2005, certain newspaper articles appeared, suggesting that the plaintiff was being given special treatment, such as not being required to pay real estate taxes. On March 16, 2005, the assessor issued a " 'New Proposed Assessment 2004' " in the amount of $502,550. While the notice referred to "a proposed increase in valuation," there had never before been any assessed valuation to increase. The assessment became final in April 2005. Based on the assessment, the plaintiff believed that the treasurer would impose a tax. Many businesses operating on Park District property under similar agreements were not assessed and/or taxed by the county.

In count I of the complaint, the plaintiff sought a declaration that it had a nontaxable license or concession, rather than a lease of the Park District's property, and, therefore, the imposition of a tax on the plaintiff's interest was unauthorized by law and unlawful. In count II, the plaintiff sought a declaration that a tax on the plaintiff's interest violated the property tax uniformity clause of the Illinois Constitution of 1970 because the plaintiff was subject to treatment that differed from the treatment of other businesses similarly situated. In count III, the plaintiff sought to enjoin the assessor from assessing its interest and the treasurer from imposing or collecting any property tax from the year 2004 and onward.

On May 10, 2006, the circuit court dismissed Cook County as a defendant. The court also granted the defendants' motion to dismiss count II in its entirety and count III to the extent that count III was based on the constitutional challenge alleged in count II. The court refused to dismiss the suit on the grounds that it lacked subject matter jurisdiction.

## C. *Cross-Motions for Summary Judgment*

On August 16, 2006, the defendants filed a motion for summary judgment. The defendants maintained that the Agreement entered into by the plaintiff and the Park District was a taxable lease. The defendants argued that the Agreement contained all the requirements of a lease—length of time, payments to be made and the permitted area. Since the Agreement contained all the elements of a lease, the defendants maintained that it could not be a license. As the Agreement was not ambiguous, the defendants asserted that they were entitled to a judgment as a matter of law that the tax was proper as a tax on a leasehold of otherwise exempt property.

In a November 15, 2006, agreed order, the defendants stipulated that "(a) it is the responsibility of the tax-exempt entity that enters into a contract that it believes creates a taxable leasehold interest under 35 ILCS 200/9—195 to notify the Assessor and provide the Assessor with a copy of such contract; and (b) the Assessor did not receive any such notice from the Chicago Park District (or anyone else) regarding the Millennium Park Concession Permit Agreement between the Plaintiff and the Park District, nor did the Assessor receive a copy thereof until it requested a copy from the Park District in February 2005."

On March 22, 2007, the plaintiff filed its motion for summary judgment. Initially, the plaintiff pointed out that there was a question as to whether the Park District had the authority to enter into leases under which it relinquished control over its property to a private commercial enterprise. To support its position that the Park District set out to enter into a license rather than a lease, the plaintiff relied on the affidavits of Judith J. Jacobs and James Horan.

In an affidavit pursuant to section 1—109 of the Code of Civil Procedure (735 ILCS 5/1—109 (West 2006)) (the Code), Judith J. Jacobs averred as follows: Ms. Jacobs was employed by Urban Retail Properties Company (Urban) and, in 1996, she became a vice president of Urban. In 1996, Urban entered into an agreement with the Park District to negotiate all the contracts between the Park District and the various concessioners that operated on Park District property. The "Concession Management and Sponsorship Agreement" was carried out between 1996 and 2005, by two subsidiaries of Urban. Between 1996 and 2005, Urban negotiated every concession vendor contract.

Ms. Jacobs was the Urban employee primarily responsible for negotiating the concession vendor contracts. At the inception of Urban's relationship with the Park District and from time to time thereafter, Ms. Jacobs was instructed by Park District employees that the Park District did not lease park property to private concession

vendors because the Park District did not have the right to enter into such leases. As a result, she understood that she was negotiating a "permit agreement" and not a "lease."

Ms. Jacobs was principally responsible for negotiating on behalf of the Park District with the plaintiff's "Park Grill" restaurant. The "permit agreement" was utilized in those negotiations. "It was well known and often stated by Park District employees that the Park District concession vendors [did] not pay property tax."

In his affidavit by certification pursuant to section 1—109 of the Code (735 ILCS 5/1—109 (West 2006)), James Horan averred as follows: Mr. Horan is a member of the Millennium Park Management Venture, LLC, the managing member of the plaintiff. He was and is duly authorized to negotiate contracts on behalf of the plaintiff. He participated in the negotiations of the Agreement with Ms. Jacobs, who was acting on behalf of the Park District. During the negotiations, Ms. Jacobs informed him that all concession businesses were required to use the "concession permit agreement" form. She explained that the permit was "in lieu of a lease and that the Park District would not grant Plaintiff a lease."

Mr. Horan explained that under the terms of the Agreement, the plaintiff shared parts of the premises and the concession area with others. For example, during the winter season, the plaintiff was not entitled to use the retail premises or the area west of the restaurant, which was operated as an ice rink. During the winter months, these areas were managed by a different vendor, Westrec. Westrec also used certain areas of the tunnel for storage during its off-season. The Park District's employees also use the tunnel all year-round for storage and for access to and from Millennium Park.

As further evidence that the parties intended a license and not a lease, the plaintiff cited the fact that the Park District did not notify the assessor when it entered into the Agreement. It was only after the February 2005 newspaper article in the Sun-Times raising the question of why the Park Grill was not paying property tax that the assessor considered the issue of whether the plaintiff's interest should be assessed as real property. There were numerous questions as to whether the interest could be assessed, such as: it was beyond the deadline to apply for a division of the property for 2004, the lack of time for the plaintiff to appeal any assessment, a property division was required to separate the plaintiff's interest from other rights in the underlying property, the lack of a property identification number (PIN), whether the assessor had the authority on his own to create a PIN and the assessor's awareness that other businesses were operating under similar agreements without being assessed. Nonetheless, the assessor chose to issue a tax bill even if it had to be cancelled later.

On October 19, 2007, the circuit court denied the defendants' motion for summary judgment and granted summary judgment to the plaintiff on count I and count III, except as to those portions of count III previously dismissed by the court. This appeal followed.

## II. ANALYSIS

### A. *Subject Matter Jurisdiction*

The defendants contend that the circuit court lacked subject matter jurisdiction to decide the legal challenges to the assessment and tax placed on the plaintiff's interest in the Park District property (the concession permit).

### 1. Standard of Review

The court reviews the issue of a circuit court's subject matter jurisdiction *de novo. In re Estate of Ahern*, 359 Ill. App. 3d 805, 809, 835 N.E.2d 95 (2005).

### 2. Discussion

"Subject matter jurisdiction permits a court to hear issues being litigated and to provide requested relief." *Ahern*, 359 Ill. App. 3d at 809. Attempts by a court to hear issues or to provide relief beyond its jurisdiction are void and may be attacked at any time. *Ahern*, 359 Ill. App. 3d at 809. Our supreme court has repeatedly held that taxation of property is a legislative rather than a judicial function. *In re Application of the County Treasurer*, 131 Ill. 2d 541, 550, 546 N.E.2d 506 (1989).

In *Board of Education of Park Forest—Chicago Heights School District No. 163 v. Houlihan*, 382 Ill. App. 3d 604, 888 N.E.2d 619 (2008), this court addressed the filing of a declaratory judgment action in the context of a revenue case, stating as follows:

> "Although the existence of another remedy ordinarily will not preclude bringing a declaratory judgment action, declaratory relief is unavailable in revenue cases. It is the rule, applying general equitable principles, that relief by way of declaratory judgment is not available if the statute provides an adequate remedy. [Citations.] 'The application of the rule that equity jurisdiction cannot be invoked where there is an adequate remedy at law depends upon the circumstances of each case.' [Citation.] It is a well-recognized principle that, because a remedy at law is afforded in a case, equity will not also take jurisdiction of the same set of facts. If the remedy in equity is more adequate because of special circumstances in the situation, the jurisdiction of equity will be sustained. [Citations.]" *Board of Education of Park Forest—Chicago Heights School District No. 163*, 382 Ill. App. 3d at 609, quoting *Paul v. City of Rockford*, 283 Ill. App. 310, 319 (1936).

The defendants contend that the plaintiff may not maintain a declaratory judgment action since the Property Tax Code provides the plaintiff with procedures for the adjudication of tax objections. 35 ILCS 200/23—5, 23—10, 23—15 (West 2006). The defendants point out that in section 23—15(b)(1), the legislature specified that "[t]his Section shall be construed to provide a complete remedy for any claims with respect to those taxes, assessments, or levies, excepting only matters for which an exclusive remedy is provided elsewhere in this Code." 35 ILCS 200/23—15(b)(1) (West 2006); see *Alexander v. County of Tazewell*, 181 Ill. App. 3d 1070, 1072, 537 N.E.2d 1139 (1989) (the statutory procedure is generally the taxpayer's remedy in tax cases). This includes challenges to an assessment on the basis that it is incorrect or illegal. 35 ILCS 200/23—15(b)(3) (West 2006).

There is no dispute that the plaintiff did not seek relief under the Property Tax Code and, instead, filed this declaratory judgment action. The defendants maintain that, as the plaintiff's exclusive remedy was under the procedures set forth in the Property Tax Code, the circuit court was without jurisdiction to rule on the declaratory judgment complaint. See *Board of Education of Park Forest—Chicago Heights School District No. 163*, 382 Ill. App. 3d at 610 (declaratory judgment is not a viable alternative to the statutory remedies provided by the Property Tax Code).

The plaintiff maintains that it is not challenging the assessment on the basis that it is incorrect or illegal but that it is "unauthorized." "Unauthorized" is defined as "[d]one without authority." Black's Law Dictionary 1525 (7th ed. 1999). "Illegal" is defined as "[f]orbidden by law." Black's Law Dictionary 750 (7th ed. 1999). The defendants acknowledge that there is no prohibition against taxing licenses in the Property Tax Code.

■ Both parties acknowledge the existence of the "unauthorized by law" doctrine. The "unauthorized by law" doctrine is one of two exceptions to the rule that equity will not assume jurisdiction to provide tax relief. *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680, 683, 655 N.E.2d 1078 (1995). The exception allows a taxpayer to seek relief without first exhausting legal remedies. *Communications & Cable of Chicago, Inc.*, 275 Ill. App. 3d at 683. The taxpayer must allege that the tax itself was invalid or that the assessor lacked authority or discretion to impose the tax as it applied to taxpayers. *Communications & Cable of Chicago, Inc.*, 275 Ill. App. 3d at 683.

The defendants maintain that the 1995 amendments to the Property Tax Code superceded the "unauthorized by law" doctrine when they eliminated another doctrine. Section 23—15 provides that

"[t]he doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies." 35 ILCS 200/23—15(b)(3) (West 2006). Because it was presumed that a tax was just, a taxpayer seeking to challenge an assessment was required to show by clear and convincing evidence that the taxing authorities had not exercised their honest judgment and that the assessment was constructively fraudulent. *In re Application of the County Treasurer*, 131 Ill. 2d at 550-51. Under the 1994 and 1995 amendments to the Property Tax Code, a taxpayer no longer had to plead and ultimately prove those elements. *In re Application of Rosewell*, 286 Ill. App. 3d 814, 819, 677 N.E.2d 443 (1997). However, the abolishment of the constructive fraud doctrine did not eliminate the "unauthorized at law" doctrine. Cases decided after the 1994-95 amendments continue to recognize the existence of the doctrine. See *Board of Education of Park Forest—Chicago Heights School District No. 163*, 382 Ill. App. 3d at 610; *Wood River Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 605-06, 772 N.E.2d 308 (2002); *Givot v. Orr*, 321 Ill. App. 3d 78, 746 N.E.2d 810 (2001).

A tax is unauthorized when the taxing body does not have authority to tax. *Wood River Township*, 331 Ill. App. 3d at 606. The defendants point out that, under the Property Tax Code, the assessor has the power to assess all property not exempted from taxation. See 35 ILCS 200/9—70 (West 2006). As the plaintiff is not claiming that the concession permit is exempt from taxation, the "unauthorized by law" doctrine does not apply in this case. We disagree.

■ Section 1—130 of the Property Tax Code defines taxable property as " '[t]he land itself, with all things contained therein, and also all buildings, structures and improvements, and other permanent fixtures thereon, *** and all rights and privileges belonging or pertaining thereto, except where otherwise specified [in] this Code.' " *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 51, 871 N.E.2d 38 (2007), quoting 35 ILCS 200/1—130 (West 2004). The supreme court noted that "Illinois case law is consistent in holding that government permits, ordinances, licenses, orders, or regulatory approvals do not create assessable entities." *Kankakee County Board*, 226 Ill. 2d at 55-56, citing, *inter alia, Boland v. Walters*, 346 Ill. 184, 188, 178 N.E. 359 (1931) (a license with respect to real property is merely a privilege to do certain things on the land without being an estate itself); see *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 56, 716 N.E.2d 842 (1999) (licenses are not subject to taxation under the Property Tax Code).

■ If a license is not an assessable entity, then the assessor lacked the authority to tax the concession permit if in fact it was a license.

Under those circumstances, it follows that the assessor's act in assessing it for real estate tax purposes would be "unauthorized by law." The question becomes whether the plaintiff is merely attacking the assessor's mistake in his determination that the concession permit was a lease which would be taxable under the Property Tax Code, or whether the declaratory judgment action directly challenged the assessor's legal authority to tax the concession permit. If the latter, then the circuit court had subject matter jurisdiction. *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 723 N.E.2d 256 (1999), relied on by the plaintiff, is instructive.

In *County of Knox*, the county zoning board granted Highlands a construction permit to erect a hog confinement facility. The permit was cancelled after objections were raised that the proposed use of the property was not a "customary agricultural use" in the area. Highlands sought declaratory and injunctive relief.[1] The circuit court granted summary judgment to Highlands, finding that the zoning board lacked jurisdiction to proceed because Highlands was engaged in an agricultural purpose which by statute was exempt from zoning regulations. *County of Knox*, 188 Ill. 2d at 549-50. The appellate court affirmed, with one justice dissenting. *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 302 Ill. App. 3d 342, 705 N.E.2d 128 (1998). Before the supreme court, the plaintiffs maintained that Highlands had not exhausted its administrative remedies.

The supreme court observed that an attack on an agency's jurisdiction based on a lack of statutory authority was an exception to the exhaustion of remedies doctrine. *County of Knox*, 188 Ill. 2d at 552. The court rejected the view expressed by the dissenting appellate court justice that Highlands was attacking the correctness of the zoning board's decision. *County of Knox*, 188 Ill. 2d at 553-54, citing *County of Knox*, 302 Ill. App. 3d at 349 (McLaren, J., dissenting). The court stated as follows:

> " 'This court has consistently held that, inasmuch as an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created.' [Citation.] The issue of an administrative body's authority presents a question of law and not a question of fact. The determination of the scope of the agency's power and authority is a judicial function and is not a question to be finally determined by the agency itself. [Citations.] Of course, administrative agencies often determine the scope of their jurisdic-

---

[1]The plaintiffs had filed for injunctive relief against Highlands, and the cases were consolidated for review.

tion. When an agency acts or refuses to act in a case, it necessarily determines whether the subject matter and its activity are or are not within the purview of the statute creating the agency. Again, however, 'this is a question of law and not of fact.' " *County of Knox*, 188 Ill. 2d at 554-55, quoting *People ex rel. Thompson v. Property Tax Appeal Board*, 22 Ill. App. 3d 316, 321, 317 N.E.2d 121 (1974). Because Highlands attacked the jurisdiction of the zoning board, its claim fell within the exceptions to the exhaustion of remedies doctrine. Thus, the circuit court had the power to hear its claim for injunctive relief. *County of Knox*, 188 Ill. 2d at 555.

The defendants distinguish *County of Knox* on the basis that there the statute specifically denied the zoning board any power over land used for agricultural purposes. While the Property Tax Code does not expressly prohibit the taxing of licenses, as explained above, a license is not an assessable interest. In *County of Knox* and the present case, it was not a question of the correctness of the zoning board's or the assessor's decisions. See *County of Knox*, 188 Ill. 2d at 555 (it was after determining that Highlands did not need to exhaust its administrative remedies that the court then had to address the correctness of the circuit court's finding that the defendants were engaged in an agricultural purpose). In *County of Knox*, the Highlands challenged the zoning board's jurisdiction to determine that the property would not be used for agricultural purposes; here, the plaintiff challenged the assessor's authority to determine that the concession permit was a lease and not a license. The fact that the court had not yet determined that the concession permit was a license as opposed to a lease does not change the basis for the challenge. See *County of Knox*, 188 Ill. 2d at 555.

It was the assessor's decision that the plaintiff's interest was a lease rather than a license, which then gave it the authority to assess the real estate tax. The determination as to whether the assessor acted within the scope of his authority under the Property Tax Code is a judicial function. See *County of Knox*, 188 Ill. 2d at 554. The plaintiff's suit challenged the assessor's authority to tax the concession permit and therefore raised an "unauthorized by law" challenge to the assessment. Under those circumstances, the plaintiff was not required to exhaust its remedies under the Property Tax Code.

We conclude that the circuit court had subject matter jurisdiction to rule on the merits of the plaintiff's declaratory judgment suit.

### B. *License or Lease*

### 1. Standard of Review

The court reviews motions for summary judgment *de novo*. *Chubb Insurance Co. v. DeChambre*, 349 Ill. App. 3d 56, 59, 808 N.E.2d 37

(2004). "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *DeChambre*, 349 Ill. App. 3d at 59. "Summary judgment should only be allowed when the right of the moving party is clear and free from doubt." *Elliott v. Williams*, 347 Ill. App. 3d 109, 112, 807 N.E.2d 506 (2004). By filing cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 215, 765 N.E.2d 1012 (2001).

## 2. Discussion

■ At the outset, the defendants concede that the concession area is not a leasehold "in that no specific area of this large geographical area has been determined to be exclusively occupied by the [plaintiff]." Since the plaintiff did not contest the amount of the assessment, the defendants assert that if any portion of the property the plaintiff uses at Millennium Park is determined to be "leased," then all of the plaintiff's interest is a lease. The defendants cite no authority for their argument. Therefore, it is waived. See 210 Ill. 2d R. 341(h)(7).

Under the Property Tax Code, leases are subject to taxation; licenses are not. *Metropolitan Airport Authority*, 307 Ill. App. 3d at 56. "Whether an agreement is a licence or a lease is not determined by the language used, but by the legal effect of the provisions and the intent of the parties." *Metropolitan Airport Authority*, 307 Ill. App. 3d at 56.

In describing the difference between a lease and a license, the court in *Metropolitan Airport Authority* stated as follows:

"A lease is a contract, conveying a lesser interest in property than a deed, which gives possession of the leased premises for the full term of the lease. [Citation.] A lease requires a 'definite agreement as to the extent and bounds of the property; a definite and agreed term; and a definite and agreed rental price and manner of payment.' [Citation.] ***

In contrast, a license is a limited right to use the licensor's premises for a specific purpose, subject to the management and control retained by the licensor. [Citation.] A license conveys no right to the land and is revocable at the licensor's will." *Metropolitan Airport Authority*, 307 Ill. App. 3d at 56, quoting *Stevens v. Rosewell*, 170 Ill. App. 3d 58, 62, 532 N.E.2d 1098 (1988).

A license is not assignable. *Stevens*, 170 Ill. App. 3d at 62.

The defendants argue that the Agreement is a lease because it contains all the essential requirements of a lease. The plaintiff

responds that both lessees and licensees pay financial consideration for their use of the property. See *In re Application of Rosewell*, 69 Ill. App. 3d 996, 387 N.E.2d 866 (1979). The plaintiff argues that the fact that the Agreement contained a 20-year term and was not terminable at will did not require a finding that the Agreement was a lease. See *Charlton v. Champaign Park District*, 110 Ill. App. 3d 554, 442 N.E.2d 915 (1982) (the court determined the contract granted a license even though it provided a specific five-year term with renewal periods and the vendor could terminate the agreement if it satisfied the park district's conditions). The plaintiff also argues that the assignability of the Agreement did not make it a lease. See *Jackson Park Yacht Club v. Department of Local Government Affairs*, 93 Ill. App. 3d 542, 547, 417 N.E.2d 1039 (1981) (finding a license where the agreement provided that it was not assignable without the consent of the park district). Moreover, because an agreement contains all the essential requirements of a lease does not necessarily make it a lease; whether an instrument is a lease is what was intended by the parties. *Feeley v. Michigan Avenue National Bank*, 141 Ill. App. 3d 187, 192, 490 N.E.2d 15 (1986). In ascertaining the intent of the parties, the court examines the relevant circumstances surrounding the execution of the agreement, the conduct of the parties, the custom and usage of the business interest and the language and terms of the agreement itself. *Feeley*, 141 Ill. App. 3d at 193.

The plaintiff relies on the affidavits of Ms. Jacobs and Mr. Horan in which they testified to the Park District's policy of not entering into leases with concessioners.[2] The plaintiff argues that the Park District's belief that it lacked the authority was the reason it sought to enter into agreements that allowed it to retain control over park property and thus avoid creating a lease. The plaintiff points out that the Park District never notified the assessor that it had entered into a lease. The plaintiff also points out that the Agreement contained no terms associated with entering into a lease, such as rent, landlord or tenant.[3] However, such evidence does not allow the court to ignore the terms of the agreement. See *Stevens*, 170 Ill. App. 3d at 63 (the court found the service agreement a lease despite deposition testimony that the parties' intent in drafting the service agreement was to avoid the imposition of real estate taxes).

---

[2]The plaintiff appears to acknowledge that the Park District's belief that it lacked the authority to enter into leases was not well-founded. See 70 ILCS 1505/15(d) (West 2006); 70 ILCS 3205/2(B)(1), (C) (West 2006).

[3]The Agreement does refer to the right to "sublet."

The plaintiff asserts that the fact that the Agreement does not grant exclusive control and possession over the premises makes it a license rather than a lease. The plaintiff further asserts that the Agreement lacked a specific description of the premises to satisfy the requirement of a lease. In addressing the control issue, the plaintiff relies on *Charlton*.

In *Charlton*, taxpayers challenged the right of the park district to contract with a private company to build and operate a waterslide on park district property. The trial court dismissed the suit, and the taxpayers appealed.

The reviewing court observed it did not have to determine whether the park district could lease its property because the contract was a license rather than a lease. The court noted that the contract granted the power to the company to construct, operate and manage the waterslide and to collect the proceeds. The court recognized some divestiture of control was inherent even in the granting of a license, but the park district had not given up complete control. Under the contract, the park district established prices, including a cap on raising prices without its permission, determined the season of operation, had the power to discharge employees, and required compliance with its affirmative action program. *Charlton*, 110 Ill. App. 3d at 560.

Finally, the court in *Charlton* noted that "[t]he operation of the waterslide, although a substantial undertaking, is clearly incidental to the total recreation facilities provided by the Park District at the park and even more incidental to the total operation of the Park District in all of its parks. The Park District has maintained sufficient control over the waterslide operation to protect its property at the site and to protect the public use of the waterslide and the rest of the park." *Charlton*, 110 Ill. App. 3d at 560.

Similarly, in this case, the Park District retained extensive control over the plaintiff's operations in Millennium Park. The Agreement set forth numerous requirements that the plaintiff had to comply with in order to conduct its operations in Millennium Park, indicating the Park District's continued control over the premises. The Agreement set forth the minimum times and dates of operation and the permitted uses of the various areas. Yet, the Park District was not required to keep Millennium Park open for any minimum amount of hours. The plaintiff was required to adequately staff the facilities with well-trained personnel and provide adequate stock.

Other requirements under the Agreement included the Park District's approval of all signs used by the plaintiff and any name change. The Park District required that certain "Key Men" or "Alternate Key Men" operate the facilities to insure the quality of the

plaintiff's operations. Under the terms of the Agreement, the plaintiff was subject to the Park District's requirements as to employee uniforms, cleanliness, pest control, signage, repair and maintenance, ice and snow removal and food safety rules. The plaintiff was also required to carry certain minimum amounts of insurance.

The defendant relies on *Stevens*.[4] In that case, McDonald's Corporation and a community college entered into a service agreement to provide food service for the college. The parties wished to provide flexibility as to where the food could be served and to avoid real estate taxes. Therefore, they provided in the service agreement that it was a license and not a lease. *Stevens*, 170 Ill. App. 3d at 63. The service agreement provided a fixed term and a fixed location, though there was a provision for expansion in both area and services. In addition, the service agreement rights were assigned to Mr. Stevens, the manager of the McDonald's campus facility. After back taxes were assessed against the campus restaurant, McDonald's and Mr. Stevens filed a declaratory judgment action seeking to enjoin the collection of the back taxes and to declare the rights of the parties under the service agreement. The circuit court granted summary judgment to the plaintiffs, and the defendants appealed.

The reviewing court reversed the summary judgment for the plaintiffs. The court construed the service agreement as a lease based on the following: the college had little control over the McDonald's operation; in fact, the operation of the restaurant was totally independent of the terms of the service agreement; the rent paid was for a fixed term; there was a fixed location; and McDonald's, through Mr. Stevens, had exclusive possession of the kitchen facilities, though the college had certain rights of access. *Stevens*, 170 Ill. App. 3d at 63-64.

The court in *Stevens* distinguished *In re Application of Rosewell*. In *Rosewell*, the court determined that agreements between the City of Chicago and various parking operations to operate parking garages were licenses and not leases. According to the agreements, the city reserved a concurrent right of possession, controlled the hours of operation, the type of uniform, the signs posted, the parking rates charged, maintenance, the operators' ability to subcontract and alterations to the premises. The rent provision was based almost

---

[4]We note that *Stevens* was a declaratory judgment action brought to enjoin the treasurer and the assessor from collecting back taxes based on the plaintiffs' assertion that the assessed property was a license and not a lease. However, the question of subject matter jurisdiction was not addressed in that case.

entirely on the gross revenues with a small percentage as merely a fee or salary for operating the garages. The court determined that the city's control of those functions indicated that the city intended to transfer only the operation of the garages. *Stevens*, 170 Ill. App. 3d at 63.

The terms of the Agreement in the present case resemble the agreements in *Rosewell* rather than the service agreement in *Stevens*. In *Stevens*, McDonald's had the exclusive right to run the restaurant as it saw fit. However, as was the case in *Rosewell*, under the terms of the Agreement, the Park District controlled many facets of the plaintiff's operation on park property. Also, in *Stevens*, the rent was a fixed amount of $30,000 per year with an additional 6% of gross sales in excess of $500,000. In the Agreement, the "minimum fee" in this case was subject to abatement under the terms of the Agreement, and the percentage of gross profits paid to the Park District escalated based on the year of operation.

■ The plaintiff also maintains that it did not enjoy the exclusive right to possess the premises as required for a leasehold. First, the plaintiff points out that, rather than "possession," it only enjoyed the "use" of the premises for its operations. The preamble to the Agreement sets forth that the Park District is the owner of the property and that the plaintiff sought the "use" of premises for the operation of its restaurant, bakery/café, retail store and for use of the tunnel area. The plaintiff maintains that its right to use the premises was limited to the purposes set forth in the Agreement. But see *Metropolitan Airport Authority*, 307 Ill. App. 3d at 56 (commercial leases routinely restrict the type of business the lessee may operate).

Secondly, the plaintiff maintains that its use of the premises was not exclusive. As Mr. Horan explained, at least one other vendor used the property, and the tunnel was used for storage by the vendor as well as used as access by Park District employees.

Thirdly, the plaintiff maintains the Agreement lacked a definite description of the property to satisfy the requirement of a lease. The Agreement described the premises as consisting of approximately 11,000 square feet in the building and approximately 15,000 square feet in the tunnel. The plaintiff points out that, according to the assessor's record, the location of the property was "unknown," and there was no amount of square footage listed for land. The assessment further set forth that 100% of the assessment was allocated to improvements and 0% was allocated to land.

The defendants respond that as long as the parties understood the extent and bounds of the property, the lease requirement was satisfied. See *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill.

2d 133, 145, 500 N.E.2d 1 (1986) (the parties must agree to the extent and boundaries of the property). Nonetheless, the vagueness of the description in this case is more indicative of a license than a lease.

Finally, the defendants point out that the Agreement contains an inheritability clause and, therefore, it cannot be a license. See *Leonardi v. Chicago Transit Authority*, 341 Ill. App. 3d 1038, 1043, 793 N.E.2d 880 (2003) (a license is a personal privilege to be enjoyed only by the licensee himself). However, as noted above, other cases have found an agreement to be a license where the assignability of the agreement required the consent of the party granting the license. See *Jackson Park Yacht Club*, 93 Ill. App. 3d at 547. The defendants have not cited any case authority that the inclusion of an inheritability clause in an agreement, in and of itself, requires that the agreement be deemed a lease rather than a license.

## III. CONCLUSION

We conclude that the Agreement conveyed a license to the plaintiff to use the Park District's property to conduct its operations. We therefore affirm the grant of summary judgment to the plaintiff and the denial of summary judgment to the defendants.

The judgment of the circuit court is affirmed.

Affirmed.

R.E. GORDON, P.J., concurs.

JUSTICE WOLFSON, dissenting:

I respectfully dissent because I believe the circuit court did not have jurisdiction to decide this case. The plaintiff should have pursued the "complete remedy" provided for in section 23—15(b) of the Property Tax Code (35 ILCS 200/23—15(b) (West 2006)).

I agree with the majority that the "done without authority" doctrine survives statutory amendment. See *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680 (1995). I part company with the majority because of its conclusion that the assessor acted without authority to assess the tax.

The assessor made a mistake. It was a whopper of a mistake. He determined the permit was a lease, not a license. As the majority carefully establishes, it was a license. But the assessor had the lawful authority to impose a tax on a lease.

The majority holds its jurisdictional finding would be different had the plaintiff challenged the assessment as incorrect or illegal. "Incorrect" fits what happened here. *County of Knox v. Highlands, L.L.C.*,

188 Ill. 2d 546 (1999), does not support the majority conclusion because the assessor's power and authority are not really issues in this case.

By finding the circuit court had jurisdiction in this case the majority opens most incorrect classifications by the assessor to trial court review without adhering to statutory procedure. That effectively reads the "complete remedy" provision out of section 23—15(b)(1).

I understand my view of this case would leave the plaintiff without a remedy to correct the mistaken assessment. At the same time, the plaintiff chose which course of challenge to pursue. It ignored the statute. We should not do the same.