Docket No. 108923.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MILLENNIUM PARK JOINT VENTURE, LLC, Appellee, v. JAMES M. HOULIHAN, Assessor of Cook County, *et al.*, Appellants.

*Opinion filed December 23, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Garman and Theis concurred in the judgment and opinion.

Justice Freeman dissented, with opinion.

Justice Burke dissented, with opinion, joined by Justices Freeman and Karmeier.

## OPINION

Plaintiff, Millennium Park Joint Venture, LLC, brought a declaratory judgment action in the circuit court of Cook County against defendants–Cook County Assessor James Houlihan and Cook County Treasurer Maria Pappas–seeking a declaration that defendants' tax assessment of plaintiff's contractual interest in real property owned by the Chicago Park District was not authorized by law. At issue in this case is (1) whether the circuit court has original subject matter jurisdiction over the declaratory judgment action

challenging as "unauthorized by law" the assessor's assessment of plaintiff's property interest; and if so, (2) whether plaintiff's agreement with the Park District created an untaxable license as opposed to a taxable lease. The circuit and appellate courts answered both questions in the affirmative. See 393 Ill. App. 3d 13. For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

Millennium Park in Chicago is owned by one or more tax-exempt entities, including the Chicago Park District, and the entire park is considered "exempt" property under the Property Tax Code (35 ILCS 200/1–1 *et seq.* (West 2008)). Plaintiff entered into a "Concession Permit Agreement" with the Park District in February 2003, which allowed plaintiff to use certain portions of Millennium Park to operate a food concession service. The Property Tax Code authorizes the assessor to tax a lessee's leasehold interest in tax-exempt property in certain circumstances. 35 ILCS 200/9–195(a) (West 2008). The statutory scheme, however, does not authorize a tax or an assessment on exempt property that is merely licensed. See 35 ILCS 200/9–70 (West 2008); 35 ILCS 200/9–195 (West 2008); 35 ILCS 200/1–130 (West 2008); *Jackson Park Yacht Club v. Department of Local Government Affairs*, 93 Ill. App. 3d 542, 547 (1981); see also *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 55 (2007) ("Illinois case law is consistent in holding that government permits, ordinances, licenses, orders, or regulatory approvals do not create assessable entities.").

Plaintiff's agreement with the Park District was for a term of 20 years, with the possibility for extensions that would allow for a total term of 30 years. The agreement divided the property to be used by plaintiff into two portions. The first section was called the "premises" consisting of 11,000 square feet in the "building" and 15,000 square feet in the "tunnel." The premises contained a sit-down, casual restaurant known as the Park Grill, a bakery and ice cream parlor known as the Park Café, and a seasonal retail store known as the Park Store. Plaintiff was also provided with storage facilities located in the tunnel.

The second section of property was designated the "concession

area," and it consisted of a large part of the park in which plaintiff was allowed to operate a seasonal mobile food and beverage concession, subject to the approval of the Park District. The agreement contained diagrams of the park showing the locations of the building and the tunnel, as well as the specific locations of the restaurant, retail store, concession area, and bakery and ice cream parlor.

The agreement required plaintiff to pay a minimum fee of $275,000 per year, with additional percentage fees based on the amount of sales and the number of years the agreement had run. For instance, in the first three years, the percentage fee was 3% of any sales between $3 million and $12 million, and 1% of any sales exceeding $12 million. By years 16 thru 20, the percentage increased to 5% of sales between $1 million and $14 million. Plaintiff was required to furnish the Park District with statements of its monthly gross sales for the calculation of the percentage fee. The Park District was also permitted to review plaintiff's financial records to determine gross sales. The minimum fee was to be abated initially until the earliest of certain specified events occurred. The Park District was to pay for all utilities.

The agreement was over 90 pages long and contained numerous requirements in which the Park District was to exercise control over plaintiff's operations. It set forth the minimum times and dates of operation and the permitted uses of the various areas, but provided that the Park District was not required to keep Millennium Park open for any minimum amount of hours. Plaintiff was required to adequately staff the facilities with well-trained personnel for efficient first class service and to provide adequate stock. The Park District had the right to approve all signs used by plaintiff and any name change. It also required that certain "Key Men" or "Alternate Key Men" continue to own or control the affairs of plaintiff's operation to insure its quality. Moreover, plaintiff was subject under the agreement to the Park District's extensive requirements regarding employee uniforms, cleanliness, pest control, signs, repair and maintenance, ice and snow removal and food and safety rules. Plaintiff was also required to carry minimum amounts of insurance.

Furthermore, the agreement did not permit plaintiff to "give, sell, license, sublet, permit, subcontract, sub-concession or otherwise

transfer its interest" in the agreement without the prior written consent of the Park District. Such consent was within the sole discretion of the Park District for the first five years of the agreement, but thereafter, the Park District was not to unreasonably withhold its consent. Subject to certain conditions, plaintiff was allowed to enter into license agreements for up to 50% of the concession carts in the concession area. The agreement contained a disclaimer indicating that plaintiff was an independent contractor and that there was no principal-agent, partnership or joint venture relationship between the parties to the agreement.

Finally, the Park District had the right to terminate the agreement immediately with written notice to plaintiff upon the occurrence of certain specified conditions or violations of the agreement. Plaintiff successfully negotiated out of the agreement a provision that would have allowed the Park District to terminate the agreement at will upon written notice.

In March 2005, the assessor sent plaintiff a notice of assessment on the property in question in the amount of $502,550 for the 2004 tax year. Although the notice referred to a "proposed increase in valuation," there had never before been any assessed valuation to increase. Plaintiff challenged the assessment before the county assessor, but that challenge was denied. The assessment became final in April 2005. Plaintiff did not file an assessment complaint with the Board of Review. The Board of Review has the power on written complaint of any taxpayer that any property is "overassessed, underassessed, or exempt" to review the assessment and "confirm, revise, correct, alter, or modify the assessment, as appears to be just." 35 ILCS 200/16–95, 16–115 (West 2008).

Instead, plaintiff filed a three-count complaint for declaratory and injunctive relief in the circuit court in August 2005. Count I of the complaint sought a declaration that plaintiff had a nontaxable license or concession, rather than a lease of the Park District's property, and therefore the imposition of a tax on plaintiff's interest would be unauthorized by law. Count II sought a declaration that a tax on plaintiff's interest would violate the property tax uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §4). In count III, plaintiff sought to enjoin the assessor from assessing plaintiff's interest and the treasurer from imposing or collecting any property tax

-4-

for the tax year of 2004 and subsequent years.

Plaintiff alleged that its agreement with the Park District did not constitute a lease for a number of reasons. Specifically, it noted that the terms of the agreement did not grant plaintiff full enjoyment and exclusive possession of the areas in which it conducted its operations. The agreement did not use the term "lease," and it did not provide for the payment of rent or purport to grant plaintiff a leasehold interest. The agreement also contained a number of provisions that allowed the Park District to maintain control over the property and plaintiff's operation of its businesses. Moreover, any disputes between the parties were to be decided by the general superintendent of the Park District. The Park District's remedies were also different from those in a lease. The Park District could terminate the agreement immediately upon the occurrence of any one of several specified conditions, but the agreement did not contain any forcible entry and detainer provisions or other landlord-tenant remedies or tenant protections.

Plaintiff further alleged that during February 2005, certain newspaper articles were published that inaccurately suggested that plaintiff was being given special treatment in not being required to pay real estate taxes. Plaintiff also alleged numerous other vendors operate concessions on Park District property similar to plaintiff and are not being assessed or taxed. Nonetheless, shortly after the publication of the newspaper articles, the assessor issued the notice of assessment on plaintiff's interest in the Park District property. Based on the assessment, plaintiff believed that the treasurer would eventually impose a tax.

Defendants filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction because plaintiff failed to exhaust administrative remedies. The circuit court denied the motion with respect to count I without prejudice to raising subject matter jurisdiction in the answer. However, the court granted defendants' motion with respect to count II in its entirety and with respect to count III to the extent that count III was based on the constitutional challenge in count II.

Thereafter, the parties filed cross-motions for summary judgment on count I. Defendants argued that the agreement entered into by plaintiff and the Park District was a taxable lease because it contained

basic requirements for a lease such as duration, payments and a definite area. Defendants asserted that they were entitled to a judgment as a matter of law on the ground that the tax was proper and lawful as a tax on a leasehold of otherwise exempt property under section 9–195 of the Property Tax Code (35 ILCS 200/9–195 (West 2008)). Defendants stipulated, however, that it is the responsibility of the tax-exempt entity to notify the assessor and provide the assessor with a copy of the contract if the tax-exempt entity believes that a contract it has entered into creates a taxable leasehold interest under section 9–195. Defendants further stipulated that the assessor did not receive any such notice from the Park District about the agreement at issue in this case, nor did the assessor receive a copy of the agreement until the assessor requested it in February 2005.

Plaintiff argued that the agreement was a license rather than a lease because it did not satisfy the most important criteria for creating a lease, namely, the Park District did not relinquish possession and control over the property to plaintiff through the agreement. Plaintiff noted that in order for the Park District to give a private commercial entity a leasehold estate in park property, the Park District would have had to give up control and possession of the property. But there is a serious question as to whether the Park District would have the authority to enter into a lease, thereby relinquishing control and possession, given that public parks are owned by park districts, which are charged by statute with the responsibility of managing and controlling all property within their jurisdictions. See 70 ILCS 1505/1 (West 2008). Against this statutory backdrop, the Park District operated under the belief that it lacked the authority to lease property to concession vendors. As a strict rule, it therefore refused to enter into such leases, even going so far as to employ uniform procedures to avoid them.

In support of its argument, plaintiff relied upon the affidavits of Judith J. Jacobs and James Horan. Jacobs' affidavit stated that she became vice president of Urban Retail Properties Company in 1996 and was responsible for negotiating all Park District contracts between 1996 and 2005 with concessioners that operated on Park District property. At the beginning of her company's relationship with the Park District and at various times thereafter, Park District personnel instructed her that the Park District did not lease park

property to private concession vendors because the Park District did not have the right to enter into such leases. She therefore understood that she was negotiating a "permit" and not a "lease." Jacobs was principally responsible for negotiating on behalf of the Park District with respect to the agreement it entered into with plaintiff. She used a standard "permit agreement" in those negotiations.

Horan stated in his affidavit that he was the managing member of plaintiff's business operations and was authorized to negotiate contracts on behalf of plaintiff at all relevant times. He negotiated the agreement involved in this case with Jacobs, who was negotiating on behalf of the Park District. During those negotiations, Jacobs informed him that all concession businesses were required to use the "concession permit agreement" form. She explained to him that the permit was in lieu of a lease and that the Park District would not grant plaintiff a lease.

Horan further stated that under the terms of the agreement, plaintiff shared parts of the premises and concession area with other entities. For example, during the winter months, plaintiff was not entitled to use the retail premises or the area west of the restaurant, which was operated as an ice rink. During that time, these areas were managed by a different vendor, Westrec. Westrec and the Park District also used certain areas of the tunnel for storage, and the Park District additionally used the tunnel for access to and from Millennium Park.

As further evidence that the parties intended a license and not a lease, plaintiff noted that the Park District did not notify the assessor when it entered the agreement. Plaintiff also cited internal documents from the assessor's office, which indicated that it was only after the February 2005 newspaper articles raised the question of why plaintiff's interest was not being taxed that the assessor considered assessing plaintiff's interest. Those documents also indicated that there were formidable obstacles to imposing a tax on plaintiff: several different entities, including the Park District, the City of Chicago, and Metra, claimed ownership of portions of the park; taxation would require division of the property to isolate plaintiff's contractual interest; the assessor was more than 15 months past the deadline to apply for a division for 2004; there was no parcel identification number (PIN) for a substantial part of the park, including the portion

where plaintiff operated; it would be unprecedented for the assessor to create a PIN where none existed; plaintiff would be left with less than the minimum 20 days required by law to appeal; and the assessor was aware of several other private companies operating under similar agreements with the Park District that were not being assessed. Despite these obstacles, within one month of the February 2005 articles, the assessor had created a new PIN to identify plaintiff's "leasehold and improvements," and sent plaintiff a notice of assessment. The assessor's office chose to issue the assessment, according to its own documents, because it "would rather have a tax bill that is cancelled than for the restaurant to go another year without a bill."

Following a hearing, the circuit court denied defendants' motion for summary judgment and granted plaintiff's motion for summary judgment on counts I and III, except as to those portions of count III previously dismissed by the court. In so doing, the court concluded that the terms of the permit agreement in question supported plaintiff's position that "the Park District's interest in not giving up exclusive possession and control over property in the Park is evident and overriding." The court further noted that the permit did not transfer to plaintiff an exclusive possessory interest coupled with the control necessary to create a leasehold estate in favor of plaintiff. Moreover, the uncontradicted evidentiary submissions and inferences demonstrated that the parties to the permit agreement did not intend to enter a lease. The court also found that the permit lacked the necessary specificity of the extent and bounds of the property, particularly in referring to the concession area, to meet all the requirements of a lease.

The appellate court, with one justice dissenting, affirmed the judgment of the circuit court. 393 Ill. App. 3d at 30. The appellate court held that plaintiff's suit "challenged the assessor's authority to tax the concession permit and therefore raised an 'unauthorized by law' challenge to the assessment." 393 Ill. App. 3d at 24. Under those circumstances, the appellate court concluded, plaintiff was not required to exhaust its remedies under the Property Tax Code and the circuit court had subject matter jurisdiction to rule on the merits. 393 Ill. App. 3d at 24. With respect to the merits, the appellate court examined the provisions of the agreement juxtaposed with the

relevant case law and unanimously determined that the agreement clearly conveyed only a nontaxable license to use Park District property and not a leasehold estate. 393 Ill. App. 3d at 26-30; see also 393 Ill. App. 3d at 30 (Wolfson, J., dissenting) ("The assessor made a mistake. It was a whopper of a mistake. He determined the permit was a lease, not a license. As the majority carefully establishes, it was a license.").

We allowed defendants' petition for leave to appeal. 210 Ill. 2d R. 315.

ANALYSIS

I. Jurisdiction Over "Unauthorized By Law" Claim

Before this court, defendants first argue that the circuit court lacked subject matter jurisdiction to consider plaintiff's declaratory judgment action that attacked the assessment. An argument challenging the subject matter jurisdiction of the circuit court presents a question of law that this court will review *de novo*. *Blount v. Stroud*, 232 Ill. 2d 302, 308 (2009). Moreover, the arguments of the parties present an issue of statutory construction, which is also a matter that this court reviews *de novo*. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006).

Both parties acknowledge the "unauthorized by law" doctrine as one exception to the general common law rule that in the field of taxation and revenue cases, equity will not assume jurisdiction to grant relief where a "complete and adequate remedy" at law exists. *Lackey v. Pulaski Drainage District*, 4 Ill. 2d 72, 78 (1954); see also *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 107 (1973). The parties disagree, however, as to whether the doctrine is applicable under the particular circumstances of the present case.

We note that public officials have no taxing power except that which is delegated to them by the legislature. *Santiago v. Kusper*, 133 Ill. 2d 318, 325 (1990), citing Ill. Const. 1970, art. IX, §10. The obligation of citizens to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the manner expressly spelled out by statute. *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 371 (1939). A tax is therefore "unauthorized" when the taxing body has no statutory power to tax. See, *e.g.*, *Wood River*

*Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 606 (2002). It has also been held that the actions of an assessor are unauthorized by law where the assessor acts with respect to property over which he has not been given any jurisdiction by statute. *Sanitary District of Chicago v. Young*, 285 Ill. 351, 370 (1918).

To be clear, the general rule is that a taxpayer is limited to first exhausting administrative remedies provided by statute beginning with the Board of Review–the remedy at law for an incorrect assessment–before seeking relief in the circuit court. *Owens-Illinois Glass Co. v. McKibbin*, 385 Ill. 245, 252 (1943); *Young*, 285 Ill. at 368. In that regard, the Property Tax Code is a comprehensive statute regulating the assessment and collection of taxes. *In re Application of the County Treasurer*, 214 Ill. 2d 253, 262 (2005); 35 ILCS 200/1–1 *et seq.* (West 2008). Sections 16–95 and 16–120 together provide that the Board of Review may revise or correct an assessment as appears to be just on complaint by a taxpayer that "any property is overassessed, underassessed, or exempt." 35 ILCS 200/16–95, 16–120 (West 2008). The taxpayer then has the option of either appealing to the Property Tax Appeal Board (35 ILCS 200/16–160 (West 2008)) or filing a tax objection complaint in circuit court specifying "any objections *** to the taxes in question" (35 ILCS 200/23–15 (West 2008)). Thus, the adequate remedy at law is to pay the taxes under protest and file a statutory objection. *North Pier Terminal Co. v. Tully*, 62 Ill. 2d 540, 546 (1976).

It has been held, however, that the general rule requiring a taxpayer to seek the relief provided by statute is subject to two exceptions: a taxpayer need not look to the remedy at law but may seek injunctive or declaratory relief in circuit court where the tax or assessment is unauthorized by law or where it is levied upon property exempt from taxation. *Clarendon Associates*, 56 Ill. 2d at 107; *Owens-Illinois*, 385 Ill. at 252; see also *Santiago*, 133 Ill. 2d at 324; *Inolex Corp. v. Rosewell*, 72 Ill. 2d 198, 201-02 (1978). These two situations constitute independent grounds for equitable relief and in such cases it is not necessary that the remedy at law be inadequate. *Clarendon Associates*, 56 Ill. 2d at 107.

Defendants argue that the assessment was authorized in this case based on the authority given to the assessor under section 9–70 of the Property Tax Code to tax "all other property." 35 ILCS 200/9–70

-10-

(West 2008). Specifically, that section provides as follows: "The Department [of Revenue] shall assess all pollution control facilities, low sulfur dioxide emission coal fueled devices, and property owned or used by railroad companies operating within this State, except non-carrier real estate. *Local assessment officers shall assess all other property not exempted from taxation*." (Emphasis added.) 35 ILCS 200/9–70 (West 2008).

The trouble with defendants' argument is that the land itself at issue in this case is property "exempted from taxation," and section 9–70 specifically precludes the assessor from assessing such exempt property. 35 ILCS 200/9–70 (West 2008). Furthermore, defendants misconstrue the definition of taxable "property" contained in the Property Tax Code where it is defined as "[t]he land itself, with all things contained therein, and also all buildings, structures and improvements, and other permanent fixtures thereon, *** and all rights and privileges belonging or pertaining thereto, except where otherwise specified by this Code." 35 ILCS 200/1–130 (West 2008).

Defendants argue for the first time in their reply brief before this court that, because the words "rights and privileges" appear in the definition of "property," defendants had the authority to assess licenses. This view is mistaken. As noted above, the Property Tax Code has been construed as not to authorize a tax or an assessment on exempt property that is merely licensed. See 35 ILCS 200/9–70 (West 2008); 35 ILCS 200/9–195 (West 2008); 35 ILCS 200/1–130 (West 2008); *Kankakee County Board of Review*, 226 Ill. 2d at 55; *Jackson Park*, 93 Ill. App. 3d at 547. Moreover, the reference to "rights and privileges" in section 9–70 is not a reference to a separate category of taxable property. Rather, it refers to the principle that when the assessor is assessing the value of real property in the hands of the owner, one of the components that comprises the valuation is the privilege possessed by the owner of having entered into a license or a lease as a licensor or lessor. But section 9–70 gives no authority to the assessor to tax or assess the licensee's or lessee's interest where the licensee or lessee by definition is not the actual owner of the land. Real estate taxes are only permitted against owners of land. The only exception to this rule is found in section 9–195 of the Property Tax Code (35 ILCS 200/9–195 (West 2008)), which allows the assessor to tax the leasehold interest of the lessee in property *leased* to it by an

owner whose property is exempt. More specifically, section 9–195 provides in relevant part as follows:

> "[W]hen property which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the property taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his or her assignee. Taxes on that property shall be collected in the same manner as on property that is not exempt, and the lessee shall be liable for those taxes. However, no tax lien shall attach to the exempt real estate." 35 ILCS 200/9–195 (West 2008).

From the foregoing, it is apparent that if plaintiff possessed a mere license rather than a leasehold interest in this case, then the assessor would not have been authorized by law to assess the property. Thus, plaintiff's claim that the assessment was not authorized because plaintiff did not possess a leasehold interest, but rather merely a license, fits squarely within the unauthorized-by-law exception, which allows challenges to be brought directly in circuit court without resort to any statutory remedy that might be applicable. We further note that the outcome of the challenge does not govern the jurisdiction of the circuit court to hear the merits. Rather, it is the nature of the challenge that governs the court's jurisdiction.

In reaching this conclusion, we find *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546 (1999), analogous and supportive, even if not directly on point. There, the plaintiff filed a complaint for declaratory and injunctive relief in the circuit court, seeking a declaration that it could proceed to construct and operate a hog confinement facility on its property. The county had been preventing the plaintiff from building and operating such a facility through enforcement of its zoning rules. The circuit court granted the plaintiff's motion for summary judgment, ruling that the county board lacked jurisdiction to proceed because the plaintiff was engaged in an "agricultural" purpose, which was exempt from zoning regulations under the Counties Code. See 55 ILCS 5/5–12001 (West 1998). The appellate court, with one justice dissenting, affirmed the judgment of the circuit court. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 302 Ill. App. 3d 342 (1998).

Before this court, Knox County argued that it had the power to

regulate the location and use of buildings on unincorporated land. See 55 ILCS 5/5–12001 (West 1998). It also relied on the doctrine of exhaustion of administrative remedies. This court began its analysis of the county's argument by noting that one of the exceptions to the exhaustion doctrine is where an agency's jurisdiction is attacked because it is not authorized by statute. *Knox*, 188 Ill. 2d at 552. This court further noted that the county relied heavily upon the appellate court dissent, which had maintained that the exception to the exhaustion doctrine did not apply because the agency had the authority to make the wrong decision:

> " '[J]urisdiction' is a limited concept, which refers only to the authority to hear and decide the case and does not depend on the correctness of the decision made. Thus, a body has 'jurisdiction' to make a wrong as well as a right decision." *Knox*, 188 Ill. 2d at 553, citing *Knox*, 302 Ill. App. 3d at 349 (McLaren, J., dissenting).

This court emphatically rejected that reasoning, noting that the "jurisdiction" of an administrative agency is different from that of a court because an administrative agency only has the authorization given to it by the legislature through statutes. *Knox*, 188 Ill. 2d at 553. The county board thus had no jurisdiction over zoning where the board's enabling legislation expressly denied the board zoning authority over land used for agricultural purposes. *Knox*, 188 Ill. 2d at 554.

This court also rejected the notion that the plaintiff's attack went to the correctness of the county board's decision rather than to the authority or jurisdiction of the board. *Knox*, 188 Ill. 2d at 554. It observed that the determination of the scope of the agency's power and authority is a judicial function and is not a question to be finally determined by the agency itself. *Knox*, 188 Ill. 2d at 554. Accordingly, before reaching the merits of whether the plaintiff's hog confinement facility constituted an "agricultural" purpose under the statute, this court found that the appellate court had correctly upheld the circuit court's power to hear the plaintiff's claim for declaratory and injunctive relief. *Knox*, 188 Ill. 2d at 555.

The same reasoning employed in *Knox* is applicable in the present case. Here, defendants argue that section 9–70 of the Property Tax Code places the duty of determining whether a property interest is

-13-

assessable directly with the assessor, and so it could never be said that any decision the assessor made was unauthorized by law. But this argument is essentially the same as the one made by the county in *Knox* that section 5–12001 of the Counties Code gave the county the power to regulate the location and use of buildings on unincorporated land. Moreover, the county in *Knox* had to decide whether or not the plaintiff's facility would be considered an "agricultural" purpose just as the assessor here had to decide whether or not plaintiff's agreement with the Park District constituted a "lease." Defendants argue that *Knox* is distinguishable because the enabling legislation in that case expressly forbade the regulation of agricultural property. But we see no legally significant difference between the two cases, as the enabling legislation in the present case does essentially prohibit taxing exempt property in any manner unless it is leased (35 ILCS 200/9–70, 9–195 (West 2008)) or used for a nonexempt purpose (35 ILCS 200/9–185 (West 2008)).

There is one way, however, that *Knox* and the present case are different. *Knox* did not involve the assessment or collection of taxes or the general common law rule that in tax cases, "equity will not assume jurisdiction to grant relief where an adequate remedy at law exists." See *Clarendon Associates*, 56 Ill. 2d at 107. Again, the unauthorized-by-law doctrine in the area of taxation is an exception to the general common law rule that equity will not assume jurisdiction. In other words, the exception allows the taxpayer to pursue a suit for declaratory and injunctive relief even where the statutory remedy at law would be complete and adequate. *Owens-Illinois*, 385 Ill. at 255-56; *Lackey*, 4 Ill. 2d at 74-75, 78. It has also been held that the only limitation in such cases is that when a taxpayer elects to pursue the remedy before the Board of Review, he will not be allowed to abandon it and then go into equity, but he may go into equity in the first instance and have relief. *Young*, 285 Ill. at 370.

The "unauthorized by law" exception to the common law rule is one that has been applied in the field of taxation for over 150 years in Illinois. See, *e.g.*, *Santiago v. Kusper*, 133 Ill. 2d 318, 324 (1990); *North Pier*, 62 Ill. 2d at 545-46; *Clarendon Associates*, 56 Ill. 2d at 107; *Owens-Illinois*, 385 Ill. at 252 (it is the general rule that courts of equity will not take jurisdiction in a proceeding at law and the

-14-

exception to the rule is a suit requesting relief from the collection of unauthorized taxes); *Chicago, Burlington & Quincy R.R. Co. v. Frary*, 22 Ill. 38, 41 (1859); see also *Board of Education of Park Forest–Chicago Heights School District No. 163 v. Houlihan*, 382 Ill. App. 3d 604, 610 (2008); *Wood River Township*, 331 Ill. App. 3d at 605-06. However, this exception to the common law rule, otherwise known as the *Owens-Illinois* exception, was modified by this court in *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 359 (1975), which held that the *Owens-Illinois* exception would no longer be applicable to situations covered by the Administrative Review Law. See also *Christian Action Ministry v. Department of Local Government Affairs*, 74 Ill. 2d 51, 60 (1978) (followed *Allphin*).

Defendants, however, have not raised any arguments in this entire litigation based on the holdings of *Allphin* and *Christian Action*, nor have they attempted to argue that the present situation is covered by the Administrative Review Law. Exhaustion of administrative remedies is an affirmative defense, and arguments pertaining thereto are waived if not raised. See *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254 (2003). Accordingly, we find that defendants waived any reliance upon *Allphin* and *Christian Action*. But we further note that any such argument would have failed in the case before us because the situation is not covered by the Administrative Review Law. First, we note that plaintiff's claim that the assessor's assessment was not authorized by law did not fit within the list of taxpayer grievances that the Board of Review was authorized to hear, as it has only been given the power to hear claims on written complaint of a taxpayer that any property is "overassessed, underassessed, or exempt." 35 ILCS 200/16–95 (West 2008). Here, plaintiff's claim does not fall under that rubric; plaintiff is claiming that its interest in the contract with the Park District should not have been assessed at all, not that it was assessed too high or low or that it is exempt. See *Stevens v. Rosewell*, 170 Ill. App. 3d 58 (1988) (circuit court decided plaintiff's declaratory-judgment action to enjoin assessor and treasurer from collecting back taxes based on claim that the assessed property was a license not a lease; but the question of subject matter jurisdiction was not broached in that case); but *cf. Jackson Park*, 93 Ill. App. 3d 542 (the parties and court treated the plaintiff's claim that its contractual interest in land owned by the park

-15-

district constituted a lease as a claim that property was "exempt"). Second, we note that the Administrative Review Law applies only to an "action to review judicially a final decision of an administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of [the Administrative Review Law]." 735 ILCS 5/3–102 (West 2008). Here, the Property Tax Code only adopts the Administrative Review Law with respect to final decisions of the Department of Revenue (35 ILCS 200/8–40 (West 2008)) and the Property Tax Appeal Board (35 ILCS 200/16–195 (West 2008)). The Property Tax Code has not expressly adopted the Administrative Review Law with respect to decisions of the Board of Review, and a taxpayer not satisfied with the decision of the Board of Review is not required to appeal to the Property Tax Appeal Board "before seeking relief in the courts." 35 ILCS 200/16–160 (West 2008). Thus, the common law "unauthorized by law" exception noted in *Owens-Illinois* and other cases is still applicable in the case before us. See *Carle Foundation v. Department of Revenue*, 396 Ill. App. 3d 329, 340 (2009); *Silver Fox Limousine v. City of Chicago*, 306 Ill. App. 3d 103, 108-09 (1999); *Communications & Cable of Chicago, Inc. v. Department of Revenue of the City of Chicago*, 275 Ill. App. 3d 680, 684 (1995).

Defendants argue that the common law "unauthorized by law" exception is no longer applicable in the aftermath of amendments made to the Property Tax Code in 1994 thru 1996 contained in section 23–15 (see 35 ILCS Ann. 200/23–15, Historical & Statutory Notes, at 188 (Smith-Hurd 2006)), which allows a taxpayer to file a tax objection complaint in circuit court and states that this "[s]ection shall be construed to provide a complete remedy for any claims with respect to those taxes, assessments, or levies." 35 ILCS 200/23–15(b)(1) (West 2008). Defendants also rely upon a provision in the same section which states that the "court shall grant relief in the cases in which the objector *** shows an assessment to be incorrect or illegal." 35 ILCS 200/23–15(b)(3) (West 2008).

We find defendants' arguments unpersuasive for a number of reasons. Initially, we note that the statutory remedy begins with a taxpayer filing a complaint with the Board of Review alleging that the property is "overassessed, underassessed, or exempt." As we have explained above, the Board of Review was not authorized to hear

plaintiff's particular contention, *i.e.*, that its contractual interest should not have been assessed at all.[1]

While it is certainly true that the 1994-96 amendments to section 23–15 give the circuit court, as part of a statutory remedy, broad authority to hear and determine "all objections specified to the taxes, assessments, or levies in question" and provides that this section is to be "construed to provide a complete remedy for any claims with respect to those taxes, assessments, or levies" (35 ILCS 200/23–15(b)(1) (West 2008)), we do not believe that this section negates the common law exception of *Owens-Illinois* with respect to "unauthorized by law" challenges.[2] As previously noted, the rule that equity will not assume jurisdiction where there is a "complete and adequate remedy at law" is the general common law rule. *Lackey*, 4 Ill. 2d at 74-75, 78. Section 23–15 simply and essentially codifies this rule. If a statute merely codifies a common law rule, however, it does not thereby eliminate any common law exceptions to the rule that might exist in the absence of any clear expression of an intent to abrogate the exception. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 63, 70 (2004).

Here, the common law exception to the general rule is the

---

[1]The statutory scheme, however, provides that "[a]n objection to an assessment for any year shall not be allowed by the court *** if an administrative remedy was available by complaint to the *** board of review under *** [s]ection 16–115, unless that remedy was exhausted prior to the filing of the tax objection complaint." 35 ILCS 200/23–10 (West 1998). Thus, in this case there was no need for exhaustion of administrative remedies where an administrative remedy by complaint to the Board of Review was not available.

[2]*Clarendon Associates*, 56 Ill. 2d at 107, noted two exceptions to the general common law rule: the first was for "unauthorized by law" challenges, and the second was for challenges claiming that a tax was levied on property that was exempt. Under the current statutory scheme, however, there is an opportunity for exhaustion of remedies and review under the Administrative Review Law for challenges claiming that property is "exempt." See 35 ILCS 200/16–115, 16–130, 8–35, 8–40 (West 2008). Furthermore, the parties agree that we are not presented with a claim that plaintiff's property is "exempt" from taxation.

unauthorized-by-law doctrine. Legislation intended to abrogate such a common law exception would have had to have been clearly and plainly expressed. *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 269 (2003); *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518 (1997). Common law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision. *Coopers & Lybrand*, 208 Ill. 2d at 269; *People v. Gersch*, 135 Ill. 2d 384, 395-97 (1990). "Common law" is simply the body of law derived from judicial decisions rather than from statutes or constitutions. Black's Law Dictionary 270 (7th ed. 1999); see also *Coopers & Lybrand*, 208 Ill. 2d at 269 (applied the rule requiring express abrogation in the context of common law created by Illinois judicial decisions).

Section 23–15 of the Property Tax Code–the statute at issue here–provides that the statutory remedy is "complete," but it makes no mention of the unauthorized-by-law exception. When statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the governing case law. *Burrell v. Southern Truss*, 176 Ill. 2d 171, 176 (1997), quoting *People v. Hickman*, 163 Ill. 2d 250, 262 (1994); see also *Carle Foundation*, 396 Ill. App. 3d at 342. Here, we believe that if the legislature had intended to abrogate the "unauthorized by law" exception to the general rule that the statutory-tax-objection procedure is the complete remedy in tax cases, it could have easily stated as much when it enacted the amendments of 1994-96; but it did not, and therefore we presume that it had no such intention. See *Carle Foundation*, 396 Ill. App. 3d at 342 (If the legislature had intended to make an exception to the doctrine of election of remedies in section 23–25 of the Property Tax Code, it could easily have done so. But it did not; therefore, the court presumed that it had no such intention.).

As proof of our conclusion, we note that the legislature did expressly abrogate another common law doctrine with the 1994-96 amendments in section 23–15 when it specifically stated that "[t]he doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies." 35 ILCS 200/23–15(b)(3) (West 2008). This shows that the legislature knew how to abrogate a specific common law principle when it desired that result. Thus, we find that the appellate court correctly concluded that

the abolishment of the constructive-fraud doctrine did not eliminate the "unauthorized by law" doctrine and that cases decided after the 1994-96 amendments continue to recognize the existence of the "unauthorized by law" doctrine. 393 Ill. App. 3d at 22, citing *Board of Education of Park Forest*, 382 Ill. App. 3d at 610, *Wood River*, 331 Ill. App. 3d at 605-06, *Givot v. Orr*, 321 Ill. App. 3d 78, 85 (2001).

Having determined that section 23–15 did not abrogate the "unauthorized by law" exception, we further find that the "incorrect or illegal" language in that same section does not change our conclusion. The appellate court correctly noted that plaintiff did not challenge the assessment on the basis that it was incorrect or illegal, but instead on the ground that it was "unauthorized." Black's Law Dictionary defines "unauthorized" as "[d]one without authority." Black's Law Dictionary 1525 (7th ed. 1999). "Illegal," on the other hand, is defined as "[f]orbidden by law." Black's Law Dictionary 750 (7th ed. 1999). The difference between the two terms is reflected in the rule that a true "unauthorized by law" challenge arises where the taxing body has no statutory power to tax in a certain area or has been given no jurisdiction to tax a certain subject, as opposed to a complaint that merely alleges procedural errors or irregularities in the taxing process, in which case equity relief would not be available. See *Lackey*, 4 Ill. 2d at 78; *Wood River*, 331 Ill. App. 3d at 606.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and when possible a court should interpret a statute according to its plain and ordinary meaning. *Donald A.G.*, 221 Ill. 2d at 246. However, when the literal reading of a statute produces an unjust or absurd result "not contemplated by the legislature" as that intent is shown by the rest of the statute, a court need not accept the literal reading. *Donald A.G.*, 221 Ill. 2d at 246.

We find that our conclusion is in keeping with the plain and ordinary meaning of the statutory language. We further note, however, that if defendants' interpretation were adopted, it would work an unjust, if not an absurd, result. Section 23–15 of the Code does not seem to be an adequate remedy to challenge an assessment based on the ground that it is unauthorized by law, particularly when compared with the administrative remedy contained in section 16–115 of the Code for other kinds of challenges to an assessment. This is because sections 23–5 and 23–10 require that a taxpayer filing

a tax objection complaint in circuit court under section 23–15 wait until "after the first penalty date of the final installment of taxes for the year in question" before filing the complaint, and then the taxpayer must pay "all of the tax due within 60 days from the first penalty date of the final installment of taxes for that year." 35 ILCS 200/23–5, 23–10 (West 2008). In contrast, a taxpayer can immediately mount a challenge with the Board of Review before any taxes are due and payable if the challenge is that the property was overassessed, underassessed, or is exempt under section 16–115. As we have already explained, plaintiff's "unauthorized by law" claim falls through the cracks of the administrative remedy of section 16–115. It seems unlikely that the legislature would intend to thwart a taypayer in such a manner from raising an "unauthorized by law" challenge. Based on all of the circumstances noted above, then, we do not believe that the legislature intended to remove an "unauthorized by law" challenge to a tax assessment from the circuit court's equity jurisdiction..

We therefore conclude that the circuit court had subject matter jurisdiction to rule on the merits of plaintiff's suit for declaratory and injunctive relief.


II. License or Lease

Turning to the merits, we now consider whether summary judgment was properly entered on behalf of plaintiff on the basis that its agreement with the Park District constituted a license as opposed to a lease.

Summary judgment is proper where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). Furthermore, it is well settled that when the parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958); *Falcon Funding, LLC v. City of Elgin*, 399 Ill. App. 3d 142, 147 (2010); *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993). This court conducts a *de novo* review of an order granting summary

judgment. *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106 (2007).

Whether a contractual agreement is a lease or a license depends on the intention of the parties determined from the legal effect of the terms of the agreement. See *Jackson Park*, 93 Ill. App. 3d at 546. A license in real property has been distinguished from a lease as follows:

> "[A] license generally provides the licensee with less rights in real estate than a lease. If the contract gives exclusive possession of the premises against all the world, including the owner, it is a lease, but if it merely confers a privilege to occupy the premises under the owner, it is a license." 53 C.J.S. *Licenses* §133, at 608 (2005).

In a similar mode, this court has held that a "license" in real property is essentially permission to do an act or a series of acts upon the land of another without possessing any estate or interest in such land. *Mueller v. Keller*, 18 Ill. 2d 334, 340 (1960). Thus, the principal difference between a lease and a license is that a lease confers the right to exclusively possess and control property, whereas a license merely confers a right to use property for a specific purpose, subject to the licensor's control. See *In re Application of Rosewell*, 69 Ill. App. 3d 996, 1001-02 (1979). Although some divestiture of control is inherent in any granting of a license, it is the degree of possession and control that must be considered to determine whether a lease rather than a license has been granted. See *Charlton v. Champaign Park District*, 110 Ill. App. 3d 554, 560 (1982).

Additionally, the essential elements of a lease include: (1) the extent and bounds of the property; (2) the term of the lease; (3) the amount of rent; and (4) the time and manner of payment. See *Lannon v. Lamps*, 53 Ill. App. 3d 145, 150 (1977), citing *Miller v. Gordon*, 296 Ill. 346, 350 (1921). If any of these elements are missing, a lease has not been created; but the fact that an agreement may contain all of these essential requirements for a lease does not necessarily make it a lease. See *Feeley v. Michigan Avenue National Bank*, 141 Ill. App. 3d 187, 192 (1986). Additionally, licenses are ordinarily revocable at the will of the grantor (see *Jackson Park*, 93 Ill. App. 3d at 547), and are generally not assignable (see *Stevens v. Rosewell*, 170 Ill. App. 3d 58, 62 (1988)). But again the crucial distinguishing

characteristic of a lease is the surrender of possession and control of the property to the tenant for the agreed upon term. J. Ely & J. Bruce, The Law of Easements and Licenses in Land §11:1 (2010); 1 R. Dolan, New York Landlord & Tenant, Including Summary Proceedings §4:11 (4th ed. 2010).

Applying the above-mentioned principles, we find that the lower courts correctly concluded that plaintiff's agreement with the Park District created a license rather than a lease, and therefore plaintiff's interest was nonassessable and nontaxable. Initially, we note that the agreement did not give plaintiff exclusive possession and control, but rather the right to use areas in the "concession area" and "the premises." The preamble to the agreement states that the Park District is the owner of the property and that plaintiff sought the "use" of the areas described in the agreement for the particular purposes described in the agreement. While commercial leases routinely restrict the type of business the lessee may operate (see *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 56 (1999)), the agreement here went much further. The agreement does not permit the exclusive use of the concession area by plaintiff, and plaintiff shares the concession area with other users. Similarly, plaintiff does not have exclusive possession of the premises or the tunnel. For example, in the five-month span beginning on November 1 each year, another vendor operates a retail business in the retail premises, during which time plaintiff has no rights, let alone possession rights. Furthermore, even during plaintiff's operating season, another vendor uses the tunnel area to store ice skates and other items. All year, the Park District's janitorial and security contractors use the Tunnel for access to the park and for storage. As with the concession area, plaintiff has no authority to exclude the public, or restrict the public's use of the premises; all such authority remains in the hands of the Park District.

A comprehensive reading of the agreement also demonstrates that it is not a lease, as it gives the Park District extensive control over all aspects of the plaintiff's business. Consistent with the Park District's statutory function to "exercise control over and supervise the operation of all parks *** and other public property" under its jurisdiction (70 ILCS 1505/1 (West 2008)), the agreement between the plaintiff and Park District contains a plethora of provisions

regulating and controlling plaintiff's operations, including 34 pages of rules in the attached riders alone. Many critical areas of plaintiff's day-to-day operations are regulated, including: days and hours of operation; mandatory products and suppliers; employee uniforms; signs; tips; employee conduct; minimum participation during construction of businesses owned by minorities; rules for designing and building carts and trailers; trash placement and pickup; use, content and location of product price boards; and repair and maintenance activities. Additionally, numerous actions of plaintiff require the Park District's prior consent: selection of menu prices and merchandise; a change in trade name; use of products that conflict with the Park District's preapproved list; the location of mobile and temporary concessions; variation from required hours or days of operation; changes in prices of product sold; any temporary closings; certain increases in the number of temporary or mobile concessions; any new signage or change in design or location; design and distribution of advertising materials; changes in concession or premises area; and any action that would result in either of the "Key Men" losing his ownership interest in, or leadership of, plaintiff.

In assessing the control issue, the appellate court correctly relied upon *Charlton*, 110 Ill. App. 3d 554, and *In re Application of Rosewell*, 69 Ill. App. 3d 996, and properly distinguished the cases relied upon by defendants. In *Charlton*, the park district awarded a concession permit to a company to build, own and operate a water slide and related concessions on park property. Taxpayers filed a lawsuit alleging that the park district lacked authority to enter into the contract and sought to have it declared void. The appellate court concluded, however, that it was unnecessary to decide whether the park district had the power to lease its real estate because the court found that the contract was a license, not a lease. *Charlton*, 110 Ill. App. 3d at 557. Based on facts very similar to the present case, *Charlton* held that the park district "has maintained sufficient control over the waterslide operation to protect its property at the site and to protect the public use of the waterslide and the rest of the park." *Charlton*, 110 Ill. App. 3d at 560. We find *Charlton* to be indistinguishable and strong support for the appellate court's conclusion in the instant case that a license rather than a lease was created.

-23-

*In re Application of Rosewell* is also on point and instructive. There, the court found that contracts between the City of Chicago and various parking garage operators were licenses and not leases. *In re Application of Rosewell*, 69 Ill. App. 3d at 1003. Under the contracts, the following items were within the city's control: hours of operation; the color and design of the uniforms, badges and caps of employees; the posting of signs; the setting of parking rates; the types of vehicles to be parked; the operator's ability to subcontract for work done on the premises; the operator's ability to make alterations and additions to the premises; the marking of pavement lanes, and the types of cash registers and forms to be used; the operator's budget, and major maintenance responsibilities. Additionally the rent provisions were based almost entirely on the gross revenues with a small percentage as a fee for operating the garages. Under the circumstances, the court found that the agreements were not intended to transfer a possessory interest coupled with the control necessary to create a leasehold estate. *In re Application of Rosewell*, 69 Ill. App. 3d at 1002-03. Just like in *Rosewell*, plaintiff's business operation in the present case was subject to the extensive control of the public entity with which it entered into the agreement.

*Stevens*, 170 Ill. App. 3d 58, which is the main case relied upon by defendants, is clearly distinguishable. There, McDonald's Corporation and a community college entered into a service agreement to provide food service for the college. McDonald's then assigned the agreement to Stevens. The parties to the food service agreement wanted to avoid real estate taxes so they stated in the agreement that it was a license and not a lease. The agreement provided a fixed term and a fixed location. The appellate court in *Stevens* construed the agreement as a lease based on the fact that the college had little control over the operation of the McDonald's restaurant. *Stevens*, 170 Ill. App. 3d at 63. The restaurant's operation was totally independent of the terms of the service agreement. Further, the rent paid was for a fixed amount over a term of years and not merely for a service. Additionally, the agreement was for a specific, fixed location where the lessee had exclusive possession of the kitchen, even though the college reserved certain rights of access. *Stevens*, 170 Ill. App. 3d at 63-64.

We find that the appellate court below correctly concluded that

-24-

the agreement between plaintiff and the Park District here resembled the agreements in *Rosewell* rather than the service agreement in *Stevens*:

> "In *Stevens*, McDonald's had the exclusive right to run the restaurant as it saw fit. However, as was the case in *Rosewell*, under the terms of the Agreement, the Park District controlled many facets of the plaintiff's operation on park property. Also, in *Stevens*, the rent was a fixed amount of $30,000 per year with an additional 6% of gross sales in excess of $500,000. In the Agreement, the 'minimum fee' in this case was subject to abatement under the terms of the Agreement, and the percentage of gross profits paid to the Park District escalated based on the year of operation." 393 Ill. App. 3d at 29.

Under the circumstances, we also conclude that the agreement in the present case did not relinquish the necessary control and possessory interest to constitute a lease.

We further question whether plaintiff's agreement with the Park District meets even the minimum requirements essential to create a lease because of the lack of specificity in describing the extent and bounds of plaintiff's interest in the property. Although specificity as to the extent and bounds of the property is optional for a license, it is mandatory for a lease. See *Feeley*, 141 Ill. App. 3d at 191. Here, the agreement described the premises as consisting of approximately 11,000 square feet in the building and approximately 15,000 square feet in the tunnel. The assessor's records showed that the assessor was unable to specifically describe plaintiff's interest, as it listed the location of the property as "unknown," and left the entry for square feet blank. The assessment further set forth that 100% of the valuation was allocated to "improvements," and 0% was allocated to "land." We agree with plaintiff and the appellate court that the vagueness of the description in this case is also a matter weighing in favor of a finding that the agreement created a license rather than a lease.

## CONCLUSION

For the foregoing reasons, we hold that (1) circuit court had

-25-

subject matter jurisdiction over the challenge to the assessment of plaintiff's property interest and (2) plaintiff's agreement with the Park District created an untaxable license as opposed to a taxable lease. Accordingly, we affirm the judgment of the appellate court, which affirmed the circuit court's ruling that granted summary judgment for plaintiff and denied summary judgment for defendants.

*Appellate court judgment affirmed.*

JUSTICE FREEMAN, dissenting:

I agree with Justice Burke that, prior to filing a complaint in the circuit court, a tax objector must first exhaust administrative remedies. I further agree that the narrow exception to this rule for instances where the tax is "unauthorized by law" does not apply under the facts of this case. I am not persuaded by the majority that there is "no legally significant difference" between this case and *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546 (1999), in light of the substantial dissimilarities in the enabling legislation in both cases. Accordingly, I join Justice Burke's dissent.

I write separately, however, to underscore my continued adherence to the significant policy considerations which support the doctrine of the exhaustion of administrative remedies, as set forth in my dissenting opinion in *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 514-15 (2008) (Freeman, J., dissenting, joined by Burke, J.):

> "[I]mportant policy considerations under[lie] the exhaustion doctrine, which include: (1) allowing the agency to fully develop and consider the facts of the cause and to utilize its expertise; (2) protecting agency processes from impairment by avoidable interruptions; (3) giving the aggrieved party the opportunity to succeed before the agency; and (4) allowing the agency to correct its own errors, thus conserving valuable judicial resources." *Morr-Fitz*, 231 Ill. 2d at 514 (Freeman, J., dissenting, joined by Burke, J.).

These policy considerations further underscore the error of the majority in allowing plaintiff to circumvent established administrative procedure.

-26-

JUSTICE BURKE, dissenting:

The plaintiff entered into an agreement with the Chicago Park District to operate a business on property owned by the Park District. The Cook County assessor determined that the agreement was a lease, and, because leases are subject to taxation, sent a notice of assessment to the plaintiff. Plaintiff disagreed with the assessor. According to plaintiff, its agreement with the Park District was merely a license to use the property and, therefore, not subject to assessment and taxation. However, instead of contesting the assessment by exhausting its administrative remedies pursuant to the Property Tax Code (35 ILCS 200/23–15 (West 2008)), plaintiff filed a complaint for declaratory judgment directly in the circuit court. Plaintiff maintained that it did not have to follow the statutory tax objection procedures set forth in the Code because the assessment and tax were "unauthorized by law," and, therefore, plaintiff was subject to an exception that permitted it to proceed in the circuit court.

The majority agrees with plaintiff and holds that, under the "unauthorized by law" exception, the circuit court had the authority to decide plaintiff's complaint. Because I disagree with the conclusion reached by the majority, I respectfully dissent.

The general rule in taxation cases is that a tax objector must first exhaust its administrative remedies before filing a complaint directly in the circuit court. *Clarendon Associates v. Korzen*, 56 Ill. 2d 101, 105 (1973). This general rule is subject to two exceptions: (1) where the tax is "unauthorized by law"; and (2) where it is levied upon property exempt from taxation.[3] *Clarendon Associates*, 56 Ill. 2d at 105. Where one of the exceptions applies, the taxpayer may elect to either pursue the administrative remedy or proceed directly to the circuit court. *Clarendon Associates*, 56 Ill. 2d at 105.

The plaintiff contends that it was not required to exhaust its administrative remedies because the assessment and tax were "unauthorized by law." I disagree. The action of a public official is "unauthorized by law" where the agency acts outside the scope of its statutory authority. Public officials have no taxing power except that which is delegated to them by the legislature. *Santiago v. Kusper*, 133

---

[3]Plaintiff does not invoke the second exception.

Ill. 2d 318, 325 (1990). A tax is unauthorized where the taxing body has no statutory power to tax. *Wood River Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 606 (2002).

The "unauthorized by law" exception does not apply to this case because the plaintiff is not attacking the statutory authority of the assessor and treasurer to assess property and collect taxes. Rather, it is challenging only the assessor's decision to characterize its property as a lease. There is no dispute that the assessor has the statutory authority to assess a lease. See 35 ILCS 200/9–70 (West 2008) ("Local Assessment officers shall assess all other property not exempted from taxation"); 35 ILCS 200/9–195 (West 2008) (where the lessee obtains a leasehold interest in property owned by a tax-exempt entity, the lease is taxable, and the lessee is liable for those taxes). Necessarily, then, the assessor has the authority to determine what is, and what is not, a lease. When the assessor erroneously determines that something is a lease, he has merely made a mistake. He has not exceeded his authority.

The majority concludes that, because the assessor has no statutory authority to assess licenses, the plaintiff's challenge of the assessment is an attack on the assessor's authority. This is not the case. Even if the assessor incorrectly deemed plaintiff's property interest a taxable leasehold, the assessor's authority does not flow from the correctness of his decisions. See, *e.g.*, *Newkirk v. Bigard*, 109 Ill. 2d 28, 37-38 (1985) ("An agency's jurisdiction or authority is not lost merely because its order may be erroneous"). Plaintiff's complaint challenged the correctness of the assessor's decision, which should only be challenged by exhausting administrative remedies under the Code. Therefore, it is improper for this court to consider this case on its merits.

I recognize that, as a result of this position, the plaintiff would have difficulty obtaining relief. However, I agree with the dissenting justice in the appellate court that "[b]y finding the circuit court had jurisdiction in this case the majority opens most incorrect classifications by the assessor to trial court review without adhering to statutory procedure." 393 Ill. App. 3d at 31 (Wolfson, J., dissenting). This is a serious concern. The majority opinion undermines a well-established statutory scheme.

Pursuant to the Property Tax Code, plaintiff should have

-28-

challenged the assessment by filing a complaint with the Cook County board of review. 35 ILCS 200/16–95 (West 2008). It then could have filed an appeal before the Illinois Property Tax Appeal Board (35 ILCS 200/16–160 (West 2008)) or paid the tax under protest and filed a tax objection complaint in the circuit court (35 ILCS 200/23–5, 23–10, 23–15 (West 2008)). If it had filed a tax objection complaint pursuant to section 23–15, the circuit court could have determined whether it was shown by clear and convincing evidence that the tax, assessment, or levy was "incorrect or illegal." 35 ILCS 200/23–15 (West 2008). Section 23–15 "shall be construed to provide a *complete remedy* for any claims with respect to those taxes, assessments, or levies, excepting only matters for which an exclusive remedy is provided elsewhere in this Code." (Emphasis added.) 35 ILCS 200/23–15(b)(1) (West 2008). Because plaintiff failed to exhaust its administrative remedies under the Code, this court may not grant plaintiff a remedy in equity.

JUSTICES FREEMAN and KARMEIER join in this dissent.